CASE 67—PETITION EQUITY—JAN. 22.

# Becker v. City of Henderson.

### APPEAL FROM HENDERSON CIRCUIT COURT.

1. MUNICIPAL CORPORATIONS—PASSAGE OF ORDINANCE.—The provision of section 3279 of the Kentucky Statutes (being a part of the charter for cities of the third class), that on the passage of ordinances relating to street improvements the yeas and nays shall be called and entered on the minutes, were substantially complied with when the minutes of the meeting gave the name of each councilman present, and the number voting in the affirmative, and the names of those voting in the negative, and when upon a correction of the minutes at the next regular meeting, and before the minutes were signed, the names of those voting in the affirmative were inserted.

2. STREET IMPROVEMENTS—VALIDITY OF ORDINANCE.—An ordinance authorizing the city to advance money to a contractor, upon the assignment to the city of his liens for improvements made, is valid, although the improvements so made by the contractor were required to be made at the expense of the abutting property owners; and the city upon the assignment became invested with all the rights of an assignee to collect same.

3. STATUTORY CONSTRUCTION—EXPENDITURE OF MONEY.—An ordinance which directs the improvement of a street at the expense of the abutting property owners, and which provides that the city shall not be liable for any of the costs of furnishing the material or doing the work, and that the contractor shall look solely to the property owners for his pay, but providing further that the city may, in its discretion, advance the money to the contractor on the cost of the improvement, and take an assignment of his lien on the property, is not an ordinance appropriating or involving the expenditure of money within the meaning of section 3304 of the Kentucky Statutes, which requires every ordinance, resolution, order, or measure appropriating or involving the expenditure of money in a city of the third class to be engrossed and presented to the mayor for his approval.

YEAMAN & LOCKETT, JOHN L. DORSEY AND MONTGOMERY MERRITT FOR APPELLANT.

The ordinance while not an appropriation of money, certainly involved the expenditure of money. It provided that the city might

advance the money by taking an assignment of the contractor's liens, and the contractor agreed with the city in his written contract to assign his lien to it in the event the money was advanced to him, which shows an expenditure of money was contemplated at the time. The ordinance was therefore invalid, because it was not presented to or signed by the mayor as required by section, 3304, Kentucky Statutes.

2. Statutory directions with reference to the mode of procedure to be followed in the enactment of ordinances, are mandatory and must be strictly followed. (Horr & Bemis on Municipal Police Ordinances, secs. 35, 49 and 50; Kniper v. Louisville, 7 Bush, 603; Murphy v. Louisville, 9 Bush, 197; Murray v. Tucker, 10 Bush, 243.)

3. The yeas and nays were not entered upon the journal as required by the statute, and the ordinance was not therefore properly passed. And although this was attempted to be corrected at a subsequent meeting, they were not entered upon the journal until after the minutes had been signed and the contract with Manion made.

4. The city had no authority in law to advance the money to the contractor and look to the property-holders for reimbursement.

CLAY & CLAY FOR APPELLEE.

1. The statute requiring the ordinance to be passed by a two-thirds vote of the councilmen, and requiring the yeas and nays to be entered upon the journal, was enacted that the record might show the passage of the ordinance and how each councilman voted. That object is accomplished here, independent of the correction of the minutes, because the record shows the names of the eleven councilmen who were present, ten of whom it shows voted aye, and gives the name of the only one who refused to vote.

2. But the proceedings were corrected at the next regular meeting as is authorized by section 3246, and the record made to show the names of those who voted in the affirmative, which certainly cured any informality.

3. The location or alteration of a street, and awarding damages to parties injured thereby, is not an act for the appropriation of money and it is not necessary that such an act should be approved by the mayor. (Preble v. City of Portland, 45 Maine, 241.) In this case the ordinance itself does not involve the appropriation of money, because none was appropriated by it, nor the expenditure of money because none was expended through it. The subsequent resolution of the council, accepting the work, and direct-

ing the advancement of the money to the contractor, is the one
under which the expenditure was made; and there is no question
made as to the regularity of the proceedings by which that was
passed.

4. The provision of the statute requiring the approval of the mayor is
merely directory. (1 Dillon on Municipal Corporations, 4th ed.,
p. 331; 17 Amer. & Eng. Enc. of Law, p. 240; Horr & Bemis on
Municipal Police Ordinances, sec. 49.)

5. But if his approval was required, it is sufficient that he appeared on
the record of the council proceedings as voting "yea" on the pass-
age of the ordinance. (Horr & Bemis on Municipal Police Ordi-
nances, sec. 51.)

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Section 3449 of the Kentucky Statutes gives to the
common council of cities of the third class the power
to pass ordinances to require the improvement of
streets and alleys by grading, paving, etc., any por-
tion thereof, not less in length than one block.

Section 3450 provides that, upon the passage of any
ordinance requiring the improvement of a street as
contemplated in section 3449, it shall be the duty of
the mayor to enter into a contract with persons offer-
ing to do the work required to be done by such ordi-
nance upon the best and most advantageous terms,
and to do this he is directed to advertise the letting of
such work in some newspaper published in said city
for at least ten days for sealed proposals for doing said
work and report such contracts in writing as he may
be able to effect to the common council for its accept-
ance or rejection, and such contracts are not binding
until ratified by the common council; and it is the duty
of the common council to require such contractor to
give bond with security for the faithful performance
of his contract.

By section 3451 the work contracted to be done must be performed under the supervision of the mayor and the engineer, and is subject to the acceptance of the common council, and it is made the duty of the engineer to make out and report to the common council accurate estimates and apportionments of the cost of said work and improvement against the owners of property liable to pay same, designating each one's liability.

Section 3452 says that when the common council shall have passed an ordinance requiring said improvements to be made, and when the contract in pursuance of such ordinance shall be executed and ratified, and the common council shall have received the report of the engineer estimating and apportioning the cost of the work, and by order or resolution shall have received said work as done according to contract, then the liability of the owners of the property chargeable with the cost of said work shall be fixed, and there shall be a lien on the property for same.

Section 3453 provides that a lien given for the purposes named in the above section may be enforced by a petition in equity in favor of the contractor or his assignee against any or all the persons liable for the cost of said work, and that it shall only be necessary for the plaintiff in the action to file a copy of the ordinance of the common council requiring the work to be done, a copy of the contract for doing same, a copy of the engineer's report showing the respective liability of each person sued and a copy of the order or reso-

lution of the common council receiving the work as
done according to the contract, which shall be, to-
gether with the corresponding allegations in the plain-
tiff's petition, *prima facie* evidence of the plaintiff's
right to recover, in which it shall be lawful for the
court to adjudge a sale of the lot of each person as will
pay his or her part of the cost according to the esti-
mate of the engineer against him or her for such, and
it shall be lawful for the court hearing the case to ad-
judge a sale of so much of the lot or lots as will pay his
or her part, and may have personal judgment against
the defendants liable for the cost of the work also.

Pursuant to the authority conferred by the aforesaid
sections of the charter of the city of Henderson, the
common council of that city passed an ordinance or-
daining that the south side of Washington street, from
Main to Green streets, be graded and improved by a
gutter and pavement in accordance with the specifica-
tions of said ordinance.

The records of the city show that this ordinance was
first read and adopted on the 9th day of May, 1894;
that it had its second reading on May 10, 1894; that
at these readings same was passed by a vote of more
than two-thirds of all members of the common council
present upon a yea and nay vote, yeas and nays being
recorded.    The records further show that this ordi-
nance was published in the Daily Journal, a newspa-
per published in the city of Henderson, for at least ten
days, and that a contract was entered into to do this
work between the city of Henderson on the one part

and one Ed Manion, with Gabe as his security, on the 24th day of May, 1894, and that this contract was approved by the common council on the same date, the contract being signed by J. B. Johnson, mayor *pro tem.*

Section 4 of the ordinance aforesaid provides it is further ordained that "the city of Henderson shall not in any event be held liable for any of the costs of furnishing any materials or doing said work. The contractor furnishing the material and doing said work shall look exclusively to the property holders fronting said improvement for his pay; provided, however, that the common council may, in its discretion, advance the money or any part thereof to the contractor on the cost of said improvement on the condition that the said contractor assign to the city his lien on the property fronting on said improvement on which said advance is made."

And the contract aforesaid also stipulates, in addition to agreeing to do the work in accordance with the specifications, "that in the event the city of Henderson advances the money on the cost of said improvement that the said Manion will assign the city his lien on the property fronting on the improvements as in said ordinance provided."

On the 30th day of June, 1894, S. H. Kimmel, the city engineer of the city of Henderson, reported to the common council of the city that the work of constructing the brick sidewalk and the brick gutter on Washington street, between Main and Green streets, as authorized by the ordinance adopted by the common

council of the city of Henderson on the 10th of May, 1894, and recorded in the proceedings of the common council, had been completed as contracted for; that there was on the south side of Washington street, between Green and Main streets, 449.1 lineal feet; that the cost of the work at $1.42 amounted to $637.72; that Nick Becker owned 207.05 of said feet, and that he owed for the work so done $294.01, at the rate of $1.42 per front foot.

It also appears from the record that on the 5th day of July, 1894, the contractor, Manion, assigned all his right, title and interest to said claim against the said Becker and others to the city of Henderson for the work done as aforesaid in front of his property in accordance with the ordinance heretofore recited.

And it is to enforce this lien that this suit has been instituted by the city of Henderson against said Becker, and same is resisted by said Becker upon a number of grounds: First, by demurrer to the plaintiff's petition, which was properly overruled, and then by answer, in which the following defenses are relied upon:

1st. They charge that the copy of the ordinance filed with plaintiff's pleading was not a true copy; that the yea and nay votes were not recorded when the ordinance was passed or approved or signed; that the names of the councilmen voting for the passage of said ordinance were inserted in the journal of the proceedings of the council after said ordinance had been passed and approved, and after the contract for doing the work had been let, and when same was without au-

thority, and upon the further claim that same was not passed by a two-thirds vote of the council at any session.

2d. That the ordinance itself authorized the city to advance to Manion, the contractor, the money to do the work in question, and that this money was furnished by the said city; that the city had no power to advance money to improve streets that by ordinance are required to be improved at the expense of the abutting property, and that plaintiff voluntarily paid said debt, and had no cause of action.

3d. Upon the ground that the charter of the city required every ordinance involving the expenditure of money within three days after its passage to be correctly and legibly engrossed by the clerk and presented to the mayor, approved by him or returned to the council with his objections in writing before the first regular meeting, which shall not be held within five days after it is presented to him; and if he returns same with his objections it is not valid until it is passed by a vote of two-thirds of all the councilmen then in office, the yeas and nays being recorded in the journal, the defendant alleging that said ordinance was an ordinance involving the expenditure of money, and it was necessary to its validity that it should have been engrossed and presented to the mayor, and that it was never presented to the mayor for his approval, and was, therefore, void.

Let us take up these defenses in the order in which they are made. First, section 3279 provides that no

ordinance shall take effect and be binding until same shall be twice publicly read and passed by the common council at two sessions held on different days, a majority of those present voting for same on both passages, the yeas and nays being called and entered upon the journal; provided, however, that all ordinances requiring the improvement of streets and alleys or the construction of sewers or fixing salaries, etc., or appropriating money where the amount appropriated is in excess of $100, shall on each passage receive the vote of two-thirds of all the councilmen then elected, yeas and nays being called and entered on the journal.

Section 3246 provides that at each regular meeting the proceedings of the preceding regular meeting and any intervening meeting or meetings shall be publicly read, corrected, approved and signed by the presiding officer and attested by the clerk.

Now the facts in this case seem to be that this ordinance was twice publicly read and passed by the common council at two sessions held on different days. It further appears from the proof that the clerk failed to record the yea and nay votes, simply noting that of the eleven members of the council present nine had voted in favor of the ordinance and two against it, giving the names of the two who voted against it. The minutes of the meeting show the names of the members of the common council who were present, and the record, therefore, with reasonable certainty shows both the names of those who voted yea and those who voted nay. The evidence for plaintiff conduces to

prove when the proceedings of these two meetings were read by the clerk at the regular meeting held by the common council on the 15th day of May, 1894, the presiding officer called the attention of the clerk to the fact that it was his duty to write out fully the names of the members of the council who voted yea, and this was done by the clerk on the 15th, and before said minutes were signed by the presiding officer.

About the date when this interlineation occurs there is some contrariety of proof, the mayor pro tem., the clerk and four of the members of the council all swearing positively that this interlineation was made on the 15th, before the minutes were signed or the contract let.

The appellant, on the other hand, proves by his own testimony and that of his attorney, J. L. Dorsey, that they examined this record as late as the 24th, after the ordinance was signed and the contract let, and that at that date the names of the councilmen voting yea had not been interlined, and same was done after that date.

It is very difficult for the court to determine what are the exact facts in regard to this matter, but we think the conclusions reached by the trial court are sustained by the weight of the evidence and should not be disturbed.

Appellant in this case stakes his claim for reversal chiefly upon the fact that the ordinance for the improvement of Washington street was an ordinance appropriating or involving the expenditure of money, and that it was necessary, in order to give validity to said

ordinance, that same should have been correctly and legibly engrossed by the clerk and presented to the mayor for his approval, and that this was not done, and that for that reason the ordinance was void.

Section 3304 requires every ordinance, resolution, order or measure appropriating or involving the expenditure of money, etc., to be so engrossed and presented to the mayor by the clerk for his approval; that if he approves same he shall sign it; that if he does not approve same he shall return it with his objections in writing to the common council at the first regular meeting, which shall not be held within five days after the same shall have been presented to the mayor, and same shall be immediately reconsidered by the council, and shall not take effect and be binding unless again passed, two-thirds of all the members elected voting for same, and the yeas and nays being called and recorded upon the journal; or, if the mayor fail to return the ordinance or resolution or measure as herein provided, it shall take effect and be in force from the time he should have been returned it.

Section 3309 provides that a mayor pro tem. shall be chosen by each common council at its first regular meeting after its organization, or as soon thereafter as practicable, from among its members, and he shall, in the absence of the mayor, or during his disability, or in case of a vacancy, perform the duties and exercise all the powers vested in the mayor, but he shall not approve or veto an ordinance, resolution or measure during the absence or disability of the mayor, unless

such absence or disability shall have continued longer than ten consecutive days.

It is an admitted fact that this ordinance was never presented to the mayor; it is also an admitted fact that the mayor, at the time of the passage of the ordinance on the 15th day of May, 1894, was in the city of Henderson, and the records also show that on the 19th he approved a considerable number of other ordinances.

It is manifest that the validity of this ordinance at last turns upon the question as to whether the ordinance itself was a measure involving the expenditure of money by the city.   It is very earnestly contended for the appellant that it did involve the expenditure of money, because the ordinance itself provided that the council, in its discretion, might advance the money or any part thereof to the contractor, on the cost of such improvement, on condition that said contractor assign to the city his lien on the property fronting on said improvement, and that in the contract made with Manion he agreed to assign to the city his lien in the event the city advanced the money to him.

It is true that these provisions, both in the ordinance and the contract, seem to contemplate the possibility of the city becoming the purchaser of the liens, which would inure to the contractor upon the completion of the work in accordance with the terms of the contract; but primarily it was in no sense an ordinance involving the expenditure of money by the city, as the ordinance clearly provides that the work should be done at the expense of the property holder.   It was

one of the usual and customary orders passed by the
common council in the discharge of the necessary
duties imposed upon it by law.   "An ordinance for the
improvement of a street by building a pavement and
sidewalk does not necessarily involve an appropria-
tion of money because none is appropriated; it does,
not involve the expenditure of money because none is
expended through the ordinance, and same is not such
an act or ordinance as is required by the charter to be
approved   by the   mayor."   ' (Preble v. Portland, 45
Maine, 241.)

"The signature of the mayor of a city incorporated
under the general laws of a State is not usually essen-
tial to the validity of an ordinance of such city when it
is regularly passed by the proper body, and has been
duly recorded by the proper officer."   (Martindale v.
Palmer, 2 Ind., 411; Fisher v. Graham, 1 Cin., 113;
Chaffee v. Grainger, 6 Mich., 651.)

There is nothing in the charter of cities of the third
class which requires the mayor's signature to the ordi-
nances, minutes or resolutions passed by the common
council, unless they appropriate money, or involve the
expenditure of money, or grant some license, privilege
or franchise.   All other proceedings may be approved
and signed by the presiding officer at a regular meet-
ing of the council.

The only resolution of the council directing an ex-
penditure of money in connection with this work was
the resolution accepting the work and directing the
clerk to issue the scrip advancing the money to the

contractor, and same is the only resolution involving the expenditure of money. There is no controversy as to the signature and approval of the mayor to that resolution and contract.

It does not seem to us that appellant in this case should complain, because the contractor who did this work had reason to believe that he could collect the money due him for same without being driven to the expense of enforcing his lien against the property of the appellant. Certainly the knowledge that he could sell his claim and realize the money for same at its full value did not add anything to the cost of the improvement for the appellant.

It is not apparent to us why the city of Henderson could not become the purchaser of this claim and be invested with all the rights of an assignee to collect same, or how such transfer or assignment in any way was injurious to the rights of this defendant. There is nothing in section 3304 which is mandatory upon the mayor; he can sign the ordinance or not sign; he can return it either with or without his veto, or he can do neither, the whole object of this section being to bring to the attention of the mayor as chief executive officer of the city all ordinances which require the expenditure of money, or the grant of license, franchise or privilege.

We conclude that the ordinance in question was not such an ordinance as by law had to be presented to him for his approval, as provided in section 3304, but that same was such an ordinance as the common coun-

cil of the city had full power and authority to pass; and, when the minutes adopting said ordinance were approved and signed by the presiding officer and attested by the clerk, they had all the binding force and legality which could be given them.

For the reasons indicated in this opinion this cause is affirmed.