CASE 64—PETITION EQUITY—APRIL 22.

# City of Covington v. Nadaud.

103    455
115    680

APPEAL FROM KENTON CIRCUIT COURT.

1. MUNICIPALITIES—STREET IMPROVEMENTS—SPECIAL ASSESSMENTS.—
Although a city council did not have a right to pledge the faith
and credit of the city to the payment of bonds issued in payment
of special assessments for street improvements, because the in-
debtedness of the city was already up to the constitutional limit,
yet it having the right under its charter to order the improve-
ments, and to make all corrections, or such orders as would do
justice to the parties concerned, and to provide for the immediate
payment of the cost thereof by the property owners, a chancellor
will not intervene on behalf of a property owner to prevent the
enforcement of the payment of his proportion of the cost of an
improvement, which was beneficial to his property, he having
petitioned for the improvement, and been cognizant of the con-
struction.

W. McD. SHAW FOR APPELLANT.

1. Appellee, together with more than two-thirds of the owners of the
property affected, petitioned the council to have this improve-
ment made, and is therefore estopped from claiming that the
assessment is invalid.   Elliott on Roads & Streets, pages 387, 388,
420, 421, 422 and 423.   Daniels v. Tierney, 102 U. S., 415; Herman
on Estoppel and Res. Adjudicata, secs. 1220 and 1221; Budwell
v. Pittsburg, 85 Pa. State, 412; City of Columbus v. Sohl, 44 Ohio
State, 481; City v. Mitchell, 31 Ohio State, 592; Pryinger v.
Harness, 114 Ind., 492; Caldwell v. Curry, 94 Ill., 26; Motz v.
Detroit, 18 Mich., 495; Ferguson v. Landrum, 5 Bush, 231; Riggs
v. Stephens, 13 Ky. Law Rep., 634; Hitchcock v. Galveston, 96
U. S., 341; Spidell v. Herrick, 120 U. S., 377; Corry v. Gaynor,
22 Ohio State, 584.

HARVEY MYERS AND U. J. HOWARD FOR APPELLEE.

1. The taxes sought to be enjoined in this action are levied for the

purpose of paying obligations declared by this court to be void. City of Covington v. McKenna, 99 Ky., 508.

2. A property owner who petitions for street improvements is not estopped to deny the validity of the asserted lien upon his property when the entire proceeding was void *ab initio*. Elliott on Roads & Streets, pages 387, 388, 420, 421, 422 and 425; Hitchcock v. Galveston, 96 U. S.; Tone v. Columbus, 39 Ohio State, page 281; Corry v. Gaynor, 22 Ohio State, page 584; Henderson v. Lambert, 14 Bush, page 24; Bigelow on Estoppel, page 672; Trustees of Bellevue v. Hahn, 82 Ky., page 1; Worthington v. City of Covington, 82 Ky., 96, page 265; City of Covington v. McKenna, 99 Ky., 508; Dillon on Munp. Corp., sec. 372.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The appellee instituted his suit in equity against the city of Covington to enjoin it from advertising his land for sale and from otherwise proceeding to enforce a lien claimed by it to enforce the assessment of a tax for the improvement of Scott street, in Covington, on which his land was situated. From the admitted facts disclosed by the pleadings it appears that, by ordinance, provision was made for the improvement of Scott street upon the ten-year plan and that the city issued and sold its bonds to raise the sum necessary to pay for the improvement when completed, the bonds being in ten series, payable from one to ten years after their date. It is further conceded that the issuance of the bonds by the city was in violation of sections 157 and 158 of the Constitution, Covington being a city of the second class and having an existing indebtedness in the aggregate exceeding 10 per centum of the value of the taxable property therein, and the consent of two-thirds of the voters of the city not having been obtained to the incurring of the additional indebtedness, under the rule laid down in City of Covington v. McKenna (99 Ky.,

508). It is also conceded that the owners of two-thirds of the front feet of real estate abutting on each side of the street improved signed the petition to the council to provide by ordinance for the improvement of that street with brick, and that the petition contained an agreement by the subscribers that when such ordinance was passed and the improvement made they would pay the proportionate amount of the assessment made against their property. That document contained a further petition that the council should provide that the construction of the street should be made on the ten-year plan. The ordinance petitioned for was regularly passed, the contract let, the improvement made, notice given, work accepted and payment therefor to the contractor made by the issue and sale of bonds upon the ten-year plan provided for in the act for the government of cities of the second class.

That act provides (Ky. Stats., sec. 3096):

"The general council may, by ordinance, provide for the construction . . . of streets . . . or parts thereof, of the city upon the petition of the owners of a majority of the front or abutting feet . . . But when such original construction is to be made with brick . . . it shall be made only upon the petition of the owner or owners of at least two-thirds of the front or abutting feet of real estate abutting on such improvement. Such original construction of public ways shall be made at the exclusive cost of the owners of the real estate abutting on such improvement . . . Such cost of construction . . . shall be apportioned among and assessed upon the lots or parcels of real estate abutting on such improvement

according to the number of front or abutting feet. There shall be a lien upon such lots or parcels of real estate for the part of the cost of such improvement so assessed thereon, and the same shall bear interest from the time of the assessment. All such liens may be enforced by action. . ."

Section 3099 provides for the inspection and reception of the work by the superintendent, with a notice thereof to the property holders.

"Sec. 3100. No error in the proceedings of the general council shall exempt from payment, after the work has been done, as required by either the ordinance or contract; but the general council or the courts in which suits may be pending shall make all corrections, rules and orders to do justice to all parties concerned. . . ."

"Sec. 3101. The general council may provide that any such construction or reconstruction shall be made on the ten-year plan; and thereupon, when any such improvement has been completed and accepted, a notice shall be given by publication in the official newspaper, requiring the property owners to pay the local taxes levied on their property; and if any such local taxes be not paid by such property owners, then to provide a fund for the immediate payment of such portion of the entire cost of such improvement or reimprovement the abutting property holders shall be liable for, but may not pay in cash, in conformity with said notice, the general council is authorized to borrow money at a rate of interest not exceeding 6 per centum per annum, in anticipation of the collection of a special tax or assessment for such improvement or reim-

provement from such property holders, and to issue the bonds of the city therefor in the manner and form herein provided, pledging the faith and credit of the city for the payment of the principal and interest thereof. Said bonds shall be divided into ten series. . . . The owner or owners of each lot or parcel of land bounding or abutting upon such improvement or reimprovement, and who does not pay in cash the entire amount of assessment or tax due from his lot or parcel of land as above provided, shall pay annually, at such time as shall be specified in the assessing ordinance of the general council, one-tenth of the amount of the assessment or tax due from his lot or parcel of land, together with 5 per centum interest thereon. . . ."

Then follow provisions for penalties, in the event of default in payment; for a lien upon each lot for the assessment against it; that such assessments shall be paid to the treasurer and go into the sinking fund, and be applied as far as practicable to the payment or purchase of the bonds issued in anticipation of their collection; but, if impracticable, to be invested as other funds of the sinking fund.

From the facts admitted by the pleadings, it appears that the work was done in accordance with the ordinance and the contract; that it was duly accepted, after notice to the property holders, and that the appellee is in the enjoyment of such benefits as may arise from the improvement. It is claimed on his behalf that the whole proceeding was void *ab initio;* that the city council had no jurisdiction to take any step, whatever, in the premises, for the reason that it must be presumed to have known the city's indebtedness, and the indebtedness having exceeded the

constitutional limit, and there having been no vote taken upon the question of increasing that indebtedness, under section 157 of the Constitution, it was without authority to even receive the petition for the improvement of the street.

This contention goes too far. The council has undoubted jurisdiction to legislate upon the improvement of the steet. It undoubtedly had authority to provide that the street should be constructed at the expense of the owners of the abutting property, and to provide that the entire cost should be payable at one time and that a lien therefor should exist upon the property of appellee for its proportionate amount thereof. The owners of more than two-thirds of the abutting front feet of property united in a petition that the street should be improved by paving with brick; and upon that petition the council was authorized to provide for the improvement, at the exclusive cost of the abutting property holders. That petition gave the council jurisdiction to act. The manner in which it should act was another question. The petition asked that the improvement should be made upon the ten-year plan. This was a matter clearly (under the statute above quoted) in the discretion of the council, and the insertion of this request in the petition can be construed to have no other effect than as an indication to the council of the preference of the property holders as to the mode of payment.

The council had a right to ack upon the question of the improvement, but, under the decision in the McKenna case, it did not have the right to pledge the faith and credit of the city to the payment of bonds payable in future years.

City of Covington v. Nadaud.

But does this fact authorize a court of equity to intervene on behalf of appellee, to prevent proceedings for the enforcement of payment of his proportion of the expense of the improvement, for the making of which he petitioned, of whose construction he was cognizant, and which is admitted by the pleadings to be of benefit to his property? We think not. The council exceeded its authority in providing for the issuance of bonds which anticipated its revenue for future years, but it did not exceed its authority in providing for the work being done. at the expense of the owners of the abutting property. (Hitchcock v. City of Galveston 96 U. S., 341.) The error in the proceedings seems to be such as can be corrected, either by the council or the courts, under section 3100, so as to do justice to all parties concerned.

This being our view of the question presented, it is unnecessary to discuss the question of whether appellee is estopped to plead the unconstitutionality of the ordinance in so far as it provides for the issuance of bonds, further than to say that, if the doctrine of estoppel is applicable to such a case—and there are numerous authorities in the affirmative—this record presents a case for its operation. (Elliott on Roads and Streets, pp. 387-8.) The work has been done as required by the ordinance and the contract, and appellee has no standing in a court of equity for an injunction to prevent proceedings to enforce payment therefor. There is no question raised between the city and the bondholder, nor does appellee seek in his petition to restrain the city from the payment of the bonds.

The judgment is reversed and cause remanded for further proceedings consistent herewith.