City of Catlettsburg and Others v. Self and Others.

---

CASE 82—ACTION BY JOHN SELF AND OTHERS AGAINST THE CITY OF
CATLETTSBURG AND OTHERS, FOR AN INJUNCTION TO PREVENT THE
CITY FROM TAXING THEIR PROPERTY FOR STREET IMPROVEMENT.—
MAY 27.

# City of Catlettsburg and Others v. Self and Others.

APPEAL FROM BOYD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL. REVERSED.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—LOCAL ASSESS-
MENTS—ISSUANCE OF BONDS—VALIDITY—REFUNDING BONDS.

Held: 1. A street improvement made by paving a street with fire-
clay brick in place of a macadamized road laid some thirty
years previous, was an original construction, and properly as-
sessed under Kentucky Statutes, section 3572, providing that an
original construction of any street shall be made at the ex-
clusive cost of the owners of abutting lots, and not a recon-

struction, the cost of which, under the provisions of section 3565, is to be borne exclusively by the city.

2. The issuance of bonds by a city in payment for street improvements, the cost of which was assessed by the council against abutting property owners, the assessment when collected to liquidate the bonds, did not create a debt within the meaning of Const., section 157, prohibiting cities from incurring indebtedness exceeding the income and revenue provided for any year, without the consent of two-thirds of the voters.

3. The fact, if true, that bonds executed by a city, which property owners are called upon to pay by assessment levied against their property, are void, is not prejudicial to the rights of such property owners, where the bonds were issued in refundment of valid bonds for the payment of which those same property owners are liable.

THOMAS R. BROWN, ATTORNEY FOR APPELLANTS.

### PLAINTIFF'S CONTENTION.

The plaintiffs do not question in their pleadings but admit, in their argument, the validity of the provisions in charter of cities of the fourth class for making local assessments against abutting property to pay the costs of paving the streets upon which they abut, and only claim that the assessments in the case at bar are void for two following reasons:

1. They contend that the city of Catlettsburg, to carry on the work of and make said improvements, raised the money required for that purpose, by giving its bond for the amount of the costs of said improvement advanced by the persons holding said bonds, and that said bonds are city indebtedness and prohibited and made void by section 157 of the Constitution of Kentucky, and that the assessments in question are made to pay said alleged void bonds, and being made to pay a void indebtedness, are themselves likewise necessarily void.

2. The plaintiffs claim that the paving in question is in fact reconstruction and not original construction, and that there is no authority given cities of the fourth class to have reconstruction done at the expense of the abutting property, and hence their property is not subject to any assessments to pay any part of the costs of said improvement.

### DEFENDANT'S RESPONSE.

The city makes response as follows, to the contention of the plaintiffs:

1. The bonds in view of the statutes regulating such matters and the ordinances providing their issual and payment, having

provided legitimate means for their payment notwithstanding any, impression from consideration of the face of the bonds separately, are to be considered in light of the statute and ordinances providing their issue as a part of same and being so considered, are specialties or local assessment bonds and not city indebtedness bonds, and therefore not a prohibited indebtedness on the part of the city under section 157 of the Constitution.

2. The city also submits that if it be conceded that the bonds are void on grounds of being evidence of city indebtedness, that that is a matter that concerns the holders of the bonds and the city as a municipality, they being the obligation of the city only, and that the assessments, collection of which is sought, are matters of liability only of the abutting property to the city, based alone upon the benefits to the property from the improvement and not upon the bonds, and, that the plaintiffs are not parties to or liable upon said bonds and are solely concerned with the assessments, and that having nothing to do with the bonds, the assessments being valid, for they themselves are unquestioned and owing to the city, the city had a right to dispose of same as it saw proper, so it did not change or increase their liability and hence pledged and undertook to collect and place amount of same into its "paving fund," and pay therefrom, "to holders of the bonds, till the amount advanced by them, to carry costs of said improvement was paid."

In other words that the city made the improvements and under the law had a right by assessments, to require the abutting property to compensate it for the benefits from the improvements to the property, by paying the costs of said improvement, and said assessments being thus a liability to the city alone, it had the right under the statute, to collect and apply same in payment for costs of making said improvement, and that no person who owes a just and valid debt, can escape liability therefor on the plea that the person to whom it is owing may not spend it for legitimate purposes. A person can do as he pleases with his own money, and he is responsible for its misuse, and the person who pays it to him on a just debt, has no, lawful concern. with his use of the money and can not use his moral scruples as to fear of misue of the money to keep from paying a just and valid debt.

3. As to the question raised by plaintiffs as to whether the improvement is a work of original or reconstruction, the city claims that it is immaterial whether original or reconstruction or by what name called.

That the improvement itself as to kind and character, where

to be made; and what to replace, was well known and provided for, and a misnomer did not change or affect its actual kind, and that if in fact reconstruction calling it original construction did not change its kind, and that whatever kind it was, that the particular kind was definitely ordered and accordingly put in by whatsoever name called.

That conceding the improvement to be reconstruction, the city had authority to require it to be paid for by assessments, from the fact that section 3565, which requires the city to bear exclusively the costs when the improvement is reconstruction, is repealed by section 3567, which requires the abutting property to bear the costs, for this latter section, as will appear from an examination of the acts of the Legislature, was enacted at a subsequent session, and hence the city did have the power to assess the abutting property even if the work was reconstruction.

4. That where the property abutting a street is laid off into squares, all the council has to do is to simply order the improvement at the expense of the abutting property, let the contract and see that the work is done, and if done according to contract, accept it. That these are all ministerial and not legislative acts, where the Legislature has designated the property to bear the costs, and being ministerial and not legislative, the board and the courts are, by the law vested with full and complete power and duty to disregard all errors or defects, where the work has been permitted to go so far as to be done and completed as required by the ordinance, and "make such rules and orders as may be necessary to do justice to all concerned," and that under this rule it being admitted that the work was done according to the contract and accepted, the law has already made the assessment upon the abutting property and that amount is owing and it makes no difference what apportionments the board may have made, the plaintiffs owe their part of the costs and that being so are entitled to no injunction until they have first paid that which the law provides. Whatever that amount is, is a matter of law, and the court will decide which of the apportionments' in the record is the one made by law, and one or the other should have been paid before any injunction is granted.

### AUTHORITIES CITED.

Kentucky Statutes, secs. 3560, 3572, 3567, 3565; Constitution of Kentucky, secs. 157, 171, 172, 174; Quill v. Indianapolis, 124 Ind., 292; 7 L. R. A., 680; Beard v. City of Hopkinsville, 44 Amer. St., 237; Nevin v. Roach, 86 Ky., 493; Lexing-

ton v. McQuillan's Heirs, 9 Dana, 514; Hyatt v. Louisville, 2 B. M., 177; Raleigh v. Peace, 17 L. R. A., 334; Reinken v. Fuehring, 15 L. R. A., 27; Pearson v. Zable, 78 Ky., 172; Cooley on Const. Limitations, 4th ed., p. 630; Gosnell v. Louisville, 20 Ky. Law Rep., 524; Barfield v. Gleason, 23 Ky. Law Rep., 134; Preston v. Roberts, 12 Bush, 570; Ludlow v. Trustees Cinti. Southern Ky. Co., 78 Ky., 560; Bradley v. McAtee, 7 Bush, 672; Loeser v. Redd & Bro., 14 Bush, 20; Broadway Baptist Church Case, 8 Bush, 515; State v. Jersey City, 29 N. J., 441, 449; 3 A. & E. Ency. Law, 886 (old ed.); City of Covington v. Nadaud, 20 Ky, Law Rep., 151; Acts 1893, chap. 241, p. 1211, &c.; Acts 1894, chap. 114, p. 343, &c.; Gleason v. Barrett, 20 Ky. Law Rep., 1696; Thompson v. Lexington, 20 Ky. Law Rep., 457; Mehler v. Richardson 23 Ky. Law Rep., 917.

W. H. WADSWORTH AND PROCTOR K. MALIN, ATTORNEYS FOR APPELLEE.

The theory upon which the relief sought by appellee is based, is:

1. That the city of Catlettsburg has incurred an indebtedness in violations of sections 157 and 158 of the Constitution of Kentucky, and

2. That the work ordered to be done at the expense of the abutting lot owners, is a work of reconstruction, which work must be done at the exclusive expense of the city, and can not be done at the expense of the abutting lot owners.

We are not attempting to enjoin the collection of the taxes upon the theory that they were imposed as an indebtedness created by the city in violation of sections 157 and 158 of the Constitution, nor that the tax rate of the city of seventy-five cents upon each $100 has been exceeded in violation of the first part of section 157 of the Constitution.

But the gist of the action lies in the fact that the latter part of said section 157 has been violated, which provides that "no county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted *in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year,* without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; and *any indebtedness* contracted in violation of this section *shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."*

It is conceded that the contract for this improvement was made and the bonds issued according to section 3574 of the statute, in pursuance to the plan of section 3572 for making the improvement, all without providing a revenue under section 157 in that year for the payment of the whole debt, and all without a vote of the people as provided in section 157, and that this indebtedness was in excess of the allowance in section 158 of the Constitution.

Our contention is, that if the bonds are invalid, which they are, if the Constitution means what it says, and if section 3577, Kentucky Statutes, means what it says, then the taxes appropriated can never be collected.

The plan adopted by the city council was that provided by Kentucky Statutes, section 3572, under which, when the work is done, the council pays the contractor off, not with apportionment warrants, or taxes, but by issuing an order upon the city treasurer to pay same in full out of the "public improvement fund," which fund is provided by the issuing of bonds of the city by the mayor covering the price of the work, and these bonds are sold and the money makes the "street improvement fund" out of which the city treasurer pays all orders which the council may order for street improvement made under section 3572. These bonds and interest are paid by assessments upon the abutting property and are a lien upon that property, and that the council did not pursue a wise course and take a vote of the people before incurring the indebtedness was no fault of the statute, but of the counsel of its advisors.

We submit that the answer and amended answer of the appellants present no defense to the petition and the demurrer thereto was properly sustained.

## AUTHORITIES CITED.

Constitution of Kentucky, sections 51, 157, 158, 166; Kentucky Statutes, secs. 3096 to 3103, 3449 to 3455, 3564, 3565, 3567, 3571, 3572, 3573, 3574, 3576, 3577, 3490, subsec. 34; City of Covington v. McKenna, 99 Ky., 508; United States v. Fort Scott, 99 U. S., 152; City of Henderson v. Lambert, 14 Bush, 30; Brown v. Trustees of Catlettsburg, 11 Bush, 535; City of Covington v. Nadaud, 20 Ky. Law Rep., 151; Tennessee Paving Company v. Barker, 22 Ky. Law Rep., 1069; Barker v. Southern Construction Co., 20 Ky. Law Rep., 827; Kirwin v. Nevin, 23 Ky. Law Rep., 947; Richardson v. Mehler, 23 Ky. Law Rep., 917; Gleason v. Barnett, 20 Ky. Law Rep., 1696; Macklin v. Wilson, 20 Ky. Law Rep., 218; Levi v. Coyne, 22 Ky. Law Rep., 493; Hazel Green v. McNabb, 23 Ky. Law Rep., 811.

Opinion of the court by JUDGE O'REAR—Reversing.

Appellant city belongs to the fourth class. Thirty years or more ago certain of its streets had been graded and macadamized, at whose cost is not shown. The improvement was quite deficient. The city council in 1900 determined to improve these ways by building them of fire-clay street paving brick, and to make the cost of the construction a charge against the abutting property. The proceedings were taken under section 3572, Ky. St., which allows: "The original construction of any street, road, alley, market space, lane, public square or grounds, wharves, levees, or avenue, may also be made at the exclusive cost of the owners of the lots and parts of lots or land fronting or abutting or bordering upon the grounds so improved, to be equally apportioned by the board of council according to the number of front feet owned by them respectively." The ordinance requiring the improvement to be made under the section quoted was regularly adopted. The contract was let to the lowest bidder, and as required by statute. The contract price of the whole work undertaken was about $25,000. The work has been completed as required by the specifications of the contract, and has been accepted by the city authorities. Under section 3574, Ky. St., the city issued bonds for the payment of the work. That section required the mayor of the city, when the work was undertaken under section 3572, to within 30 days after the signing of the contract issue the bonds of the city in such amount as the council might order, not exceeding the contract price of the work and the expenses of issuing the bonds, which bonds were made redeemable at any time within 10 years. Section 3575, Ky. St., provides an elaborate plan for the payment of the bonds and interest, the substance of which is: The funds arising from a sale of the

bonds shall be kept separately and exclusively, and be
known as the "Street Improvement Fund," and be applied
only to the purpose for which the bonds were by ordinance
directed to be issued. As soon as the improvement should
be completed, it should, with its accruing interest, be pro-
rated against the abutting property by the front foot. The
apportionment so made thereby became an assessment upon
the abutting properties, collectible therefrom as other taxes,
and secured by a lien on the property. It was collect-
ible in annual installments, so that when collected it would
liquidate the bonds. The bonds as provided for in the
section last referred to were issued to the amount of $25,-
000, "payable semi-annually from the date of same, and
payable and redeemable not on the faith and credit of said
city, but out of and secured by a lien on the assessments
to be made and equally apportioned against said lots and
parts of lots or lands," etc. Thereafter the city undertook
to refund those bonds by substituting its unconditional ob-
ligation to pay the holders that much money in any event,
pledging all the revenue and property of the city therefor.

This suit was brought by appellees, on their own behalf,
as well as on behalf of all others similarly situated, who it
was alleged were too numerous to be joined, but whose in-
terest was one in common with appellees, obtaining an in-
junction against the collection of the assessments made
by the city against the abutting property to pay the bonds
in question. Appellees are owners of some of the prop-
erty affected by the assessment. Two grounds were relied
on to defeat the city's right to require appellees' property,
by any sort of tax, to pay for this improvement: First, it is
claimed that the work was not original construction, but was
reconstruction, which is by statute (section 3565) to be
borne by the city, and not by the abutting property; and,

second, that, viewing it as a debt of the city, it was in excess of the income and revenues provided for that year, and, not having been authorized by a two-thirds vote of the taxpayers at an election held for that purpose, was therefore contracted in violation of sections 157 and 158 of the Constitution, and was by the terms of that instrument forever void. The learned circuit court sustained appellees' attack upon the assesment, but upon which of the two grounds asserted we are not advised.

Paving the streets with fire-clay paving brick was a radical improvement. For aught the record shows, the old macadamized roadway was an incomplete and insufficient provision for accommodating the public travel. It was probably more in the nature of a temporary makeshift till such time as the growth, affairs and importance of the municipality would justify its making a more permanent and expensive roadway. In McHenry v. Selvage, 99 Ky., 232, 18 R., 473, 35 S. W., 645, a macadamized road had been taken into the city by an extension of its boundary. Upon the city's directing it to be paved in accordance with a general plan of the street improvements, it was held that this was original, and not reconstruction, within the meaning of the statute. This was followed in Mackin v. Wilson (20 R., 218), 45 S. W., 663. This view of the law seems to have been founded upon the idea that, as the abutting property is most benefited by a radical and permanent improvement, it should bear the cost of it; but, where it has once done that, reconstructions in their nature resembling repairs should be borne by the entire municipality. Until the abutting property has once been compelled to bear this burden, it has not constructed originally the street, which, in justice to all other property within the city, and upon an equal basis under the statute, it should do. We are of opinion

that the improvement in this case comes within the term "original construction," as used in the statute. We have not overlooked City of Louisville v. Tyler, 111 Ky., 588, 23 R., 827, 64 S. W., 415. Even if the principle of that case is not opposed to McHenry v. Selvage, the facts are variant enough to distinguish it from this case.

If these bonds, or the cost of this improvement, be deemed a debt or liability of the city, it is admittedly in excess of the revenues and income of the city for the year 1900 (when incurred), and would be void, because, not having been authorized by two-thirds of the voters of the city voting on that subject at an election held for that purpose, it would be in violation of section 157 of the Constitution. It is argued for appellees that the fact that the city has assumed by its bonds to pay for this work makes the liability that of the municipality; that it is not material, as affecting the nature of the liability, whence the city derives its means of discharging it. The construction and maintenance of proper roadways within its jurisdiction is one of the first duties of a municipality. In the matter of selecting the time and manner of making such improvements, the town acts legislatively. So it does, too, in providing the manner of the payment for the improvement. It derives this legislative authority, including the power of taxation to that end, by its delegation from the State Legislature, in which is vested all the power of taxation in the State. That such improvements may be made, if deemed advisable by the proper legislative body, at the exclusive cost of the property primarily and directly benefited thereby, within the limits of such benefit, is a doctrine too long and too often applied in this State, and generally everywhere, to now admit of question or need citation of authorities. When the city directs, as it may, that such improve-

ment be made at the exclusive cost of the abutting property, and the statute requires it to be borne in such event exclusively by the abutting property, the liability for the cost of the improvement is in no sense a personal one upon the city. The contractor must look alone to the property designated by the ordinance directing the improvement for pay for his work and materials. Gosnell v. City of Louisville, 104 Ky., 201, 20 R., 519, 46 S. W., 722; Becker v. City of Henderson, 100 Ky., 450, 18 R., 881, 38 S. W., 857. The city in this matter acts for the State in exercising the legislative discretion as to when, where and how such roadway improvements shall be made. The imposition of the cost, in the nature of a tax, is generally involuntary, so far as the person to bear it is concerned. The city council must and does act for him, in making the contract with the contractor, as to terms, price, etc. The statute has undertaken to break the payments of such improvements into installments, of such duration and amounts as will likely bear least oppressively upon the taxpayer. The council, by virtue of its statutory authority to contract for the taxpaying lot owner, executes the city's bonds for the contract price. These bonds, by the terms of the ordinance under which they are issued, and of the statute upon which their validity is dependent, are payable only out of the "Street Improvement Fund," which is to be collected from the property benefited by the improvement and charged with it.

A statute very similar to the one here involved, and under a like constitutional provision, was before the Indiana Supreme Court in Quill v. City of Indianapolis, 23 N. E., 788, 7 L. R. A., 681. The conclusions of that court appear to us to fairly state the nature and effect of the obligations. It said: "It is enough to say the remedy of the holders of the bonds or certificates is confined exclusively to the spe-

cial fund provided for, and to the collection of assessments by enforcing the lien upon the lots or parcels of ground assessed with the cost of the improvement. The city is in no way liable for the payment of the bonds, except out of the special fund to be accumulated from assessments made against the property benefited. According to the scheme promulgated in the statute, in case the assessments are paid without delinquency, it is impossible for a single bond or certificate to mature in advance of the accumulation of a special fund devoted exclusively to its payment. If the assessments become delinquent, the remedy of the holders of the bonds or certificates is confined to the property. There is no liability against the city. The special fund provided for and the property are the sources from which the holders of the bonds and certificates must receive their pay, the city authorities acting merely as an agency for making and collecting the assessments, and as the custodian of the fund when the assessments are collected. In this they do not act as the agents of the city, but as special agents to accomplish a public end."

We are of opinion that the bonds first issued in settlement of this work were valid, and not in conflict with section 157 of the Constitution. Whether the second issue of bonds—the refunding bonds referred to—wherein the credit and property of the city are pledged to the payment of the cost of the improvement, as a valid one, may be doubted. City of Covington v. Nadaud, 103 Ky., 455, 20 R., 151, 45 S. W., 498. But we are unable to see wherein appellees are prejudiced by that fact, for, if these are not valid, then they owe the others which were exchanged for them. There does not appear to be any question between the city and the holders of the bonds as to their validity, and if appellees and others liable therefor pay to the city the money owing

for the improvement as required by the ordinance and the statute, and the money is applied to discharging the liens upon their property, it does not appear to us that the matter of the form of the indebtedness, as executed by the city, is of vital materiality to appellees. It is admitted that the benefits were more than double the cost of the improvement, and that the work has been done in every respect according to the contract.

The judgment of the circuit court is reversed, and cause remanded, with directions to dismiss appellees' petition and to discharge the injunction.

Petition for rehearing by appellee overruled.