## Castle, et al. v. City of Louisa, et al.

(Decided March 9, 1920.)

### Appeal from Lawrence Circuit Court.

1.  Municipal Corporations—Local Improvements—Assessment of Benefits—Municipal Indebtedness.—Contracts for local improve-

ments, the cost of which is to be borne wholly by the property benefited, do not create a municipal indebtedness within the meaning of sections 157 and 158 of the Constitution.

2. Municipal Corporations—Local Improvements—Assessment of Benefits—Municipal Indebtedness.—Where street improvement bonds are not payable wholly out of a special fund from assessments on the property benefited, but the faith and credit of the city are pledged for their payment, they are within the meaning of sections 157 and 158 of the Constitution limiting municipal indebtedness.

3. Municipal Corporations—Local Improvements—Assessment of Benefits—Municipal Indebtedness.—Where the ordinance authorizing the issue of street improvement bonds provides that the faith and credit of the city are not pledged for their payment, but that the faith and credit of the city are merely pledged to collect the assessments and pay over the proceeds to the holders of the bonds, the liability of the city is not an indebtedness within the meaning of section 158 of the Constitution.

4. Municipal Corporations—Local Improvements—Assessment of Benefits—Municipal Indebtedness.—Though a bond issued to pay the city's part of the cost of street improvements is an indebtedness of the city, it is valid, where the proceedings are otherwise regular and proper, and it is authorized by a proper vote of the people at an election held for that purpose, and it, together with the other indebtedness of the city, does not exceed three per cent of the value of the taxable property of the city as estimated by the assessment next before the last assessment previous to the incurring of the indebtedness as provided by section 158 of the Constitution.

G. W. CASTLE for appellants.

FRED M. VINSON and R. C. McCLURE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This suit was brought by G. W. Castle and Vessie Castle, citizens and taxpayers of the city of Louisa, a city of the fifth class, to enjoin two street improvement bond issues, one for $150,000.00 and the other for $10,000.00. A demurrer was sustained to the petition and the petition dismissed. Plaintiffs appeal.

It seems that the city council took the precaution to have both issues submitted to a vote of the people at the regular election in November, 1919, and that each issue was carried by the requisite majority. It is conceded,

and the record shows, 'that all the steps necessary to the validity of the bonds were properly taken, but insisted that they will impose upon the city an indebtedness in excess of three per cent of the value of its taxable prop- er'ty as prohibited by section 158 of the Constitution.

We shall first discuss the validity of the $150,000.0u bond issue.

The charter of ci'ties of the fifth class authorizes the city council to improve streets, and to determine whether the cost shall be paid out of the general fund of the city or by the owners of the abutting proper'ty. It further provides that the cost of constructing or reconstructing the intersection or crossing of streets, avenues and high- ways shall be at 'the expense of the city. · Kentucky Statutes, section 3643, subsection 1.

Subsections 3, 4 and 5 are as follows:

"3.   The original construction or reconstruction of any streets, avenues, highways, alleys, sewers and public places may be made at the exclusive cost of the owners of the lo'ts and parts of lots or lands fronting or abutting or bordering upon the proposed improvements to be equally apportioned by the city council according to the number of front feet owned by them respectively, or in part at the cost of the owners and in par't at the cost of the city, upon the petition of a majority of the property owners of lots or parts of lots, or land abutting or bor- dering upon 'the proposed improvement; or the city council may cause same to be done without such petition upon the vote of four members-elect of said council at a regular meeting thereof; or the council may, by a ma- jority vote of any regular meeting thereof, cause any such improvement to be made upon 'the ten-year bond plan as hereinafter provided.

"4.   But any work undertaken under the provision of the preceding section, to-wit: Upon the ten-year bond plan is completed in accordance with the contract, the work shall be received by 'the city council and the said council shall order the payment for the same made to the contractor by issuing an order (to) the city treasurer to pay same in full out (of) the 'street improvement fund.'

"5.   Whenever any work done hereunder (upon the 'ten-year bond plan) has been completed and accepted, the city council shall issue the bonds of the city, in sums

not to exceed the cost of said improvement, and all expenses in connection therewith, including the expenses and the issual and sale of said bonds, and shall sell the same to the highest bidder after due advertisement at a price not less than par and accrued interest. Said bonds shall be divided into ten series, each series to be as nearly equal as possible, said series to be paid respectively in one, two, three, four, five, six, seven, eight, nine and ten years after date. Said bonds shall be of the denomination of one hundred dollars or multiple thereof not exceeding five hundred dollars, and shall bear interest at a rate not to exceed six per cent per annum, and shall be payable at a Kentucky bank to be designated by the city council.''

Subsection 6 provides in substance that all moneys arising from the sale of bonds shall be kept by the city treasurer in a separate fund to be known as the ''street improvement fund,'' and the treasurer shall pay out of the said fund all orders which the city council shall direct paid for any street improvement provided for in the act.

Subsection 7 prescribes the method of assessment, while subsection 9 creates a lien on the abutting property to pay the assessments.

The street improvement ordinance provides that the cost of improving the streets should be at the exclusive cost of the owners of the abutting property, and that the improvement should be on the ten-year bond plan.

After providing for the issue of the bonds, section 7 of the ordinance contains the following provision:

''Said bonds shall not be issued upon the faith and credit of the city of Louisa, for the payment thereof, but the faith and credit of the city of Louisa shall be pledged for the payment of the sums realized upon the apportionment assessed against the property, for the cost of the paving and curbing, together with the incidental guttering, drainage and sewerage connected with such paving of said streets, and to use all legal means to enforce the collection of the apportionments, in accordance with the provisions of the act of the General Assembly of the Commonwealth of Kentucky, to-wit: An act relating to cities of the fifth class, and repealing section 3643, chapter 89, Kentucky Statutes, Carroll's edi-

tion, approved by the Governor, March 18, 1912, being section 3643 of the Kentucky Statutes.

"And said bonds shall be payable and redeemable, not on the faith and credit of the said city, but out of, and secured by a lien on the assessments to be made and apportioned against said lots and parts of lots, or lands fronting or abutting or bordering upon the said streets and public ways herein ordered to be improved. All money paid, received, or collected upon the assessments, as in this ordinance provided, and interest on the deferred annual payments, as provided in said act, and all money arising from the sale of bonds herein provided for, shall be kept by the city treasurer in a separate fund, to be known as the 'street improvement fund'; and said bonds shall be paid out of the amount realized upon said assessments to be made and apportioned as hereinafter mentioned."

It is the established rule in this and other jurisdictions that contracts for local improvements, the cost of which is to be borne wholly by the property benefited, form no part of the indebtedness of the municipality within the meaning of sections 157 and 158 of the Constitution. The reason for the rule is that the contractor or holder of the bond must look alone to the fund created by the collection of the assessments on the abutting property, and the city is a mere agency for collecting the assessments and custodian of the fund when the assessments are collected. German National Bank v. Covington, 164 Ky. 292, 175 S. W. 330, Ann. Cas. 1907 B. 189; Catlettsburg v. Self, 115 Ky. 669, 74 S. W. 1064; 25 Ky. L. Rep. 163; Adams v. Ashland, 26 Ky. L. Rep. 184, 80 S. W. 1105; Guilfoyle v. Maysville, 129 Ky. 532, 125 S. W. 666; Quill v. Indianapolis, 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681. On the other hand, the fact that local improvement bonds are to be paid out of assessments which are made a lien upon the property benefited does not render them legal on the theory that they do not create an indebtedness against the city, where the bonds provide for the pledging of the faith and credit of the city for the payment of the principal and interest thereon. Covington v. McKenna, 99 Ky. 508, 86 S. W. 689; Covington v. Nadaud, 103 Ky. 455, 45 S. W. 498, 20 Ky. L. Rep. 151; Gedge v. City of Covington, 26 Ky. L. Rep. 273, 80 S. W. 1160. In other words, if the liability of

the city is general, so that it must pay the bonds at all hazards, the liability constitutes an indebtedness, but if its obligation is confined merely to collecting the assessments and paying the proceeds over to the holders, its liability is not an indebtedness within the meaning of the debt limit provisions of the Constitution. In this case the ordinance distinctly provides that the bonds shall not be issued upon the faith and credit of the city, but the faith and credit of the city shall be pledged for the payment of the sums realized upon the assessments. It is therefore clear that the city does not obligate itself to pay the bonds out of its general funds but merely to pay them out of the assessments on the abutting property. There is nothing in the statute which prevents the city council from thus restricting the liability of the city, and when so restricted, it is not an indebtedness which may be considered in determining whether the constitutional debt limit has been exceeded.

The case of Schuster v. City Council, City of Oakdale, 180 Ky. 760, 203 S. W. 715, does not announce a contrary doctrine. In that case it was proposed to issue the bonds of the city without any restriction as to its liability. In other words, the faith and credit of the city were to be pledged for the payment of the bonds, and the court held that, that being true, the liability was none the less an indebtedness of the city, though the city might reimburse itself out of the assessments on the abutting property.

With respect to the $10,000.00 bond issue to pay the city's proportionate part of the street improvements, it is sufficient to say that it was approved by more than two-thirds of the voters voting at an election held for that purpose, and though it is a debt within the meaning of section 158 of the Constitution, it, together with the other indebtedness of the city, does not exceed three per cent of the value of the taxable property of the city as estimated by the assessment next before the last assessment previous to the incurring of the indebtedness. That being true, and the proceedings providing for the issue being otherwise regular and proper, it follows that the issue is valid.

Judgment affirmed.