CHENEY *v.* CITY OF DETROIT.

MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—PAVEMENT—
TAXATION—ABUTTING OWNERS—DETROIT CHARTER.

Although a highway in a township was improved by the
construction of a concrete pavement by order of the county
commissioners, where it was paid for by a bond issue of
the county, the pavement of said highway several years
later, after it became a part of the city of Detroit, by order
of the city council, was not a repavement within the
meaning of the city charter requiring the expense thereof
to be paid for from the general road fund, and the suit
of abutting owners to restrain the city from collecting
from them the tax therefor was properly dismissed.

Appeal from Wayne; Johnson (Clayton C.), J., presiding. Submitted April 3, 1923. (Docket No. 8.)
Decided October 1, 1923.

Bill by Charles E. Cheney and others against the
city of Detroit to enjoin the collection of a paving
tax. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Doremus & Lawson* and *Donnelly, Hally, Donnelly &
Munro,* for plaintiffs.

*Clarence E. Wilcox,* Corporation Counsel, and *Walter
Barlow,* Assistant Corporation Counsel, for defendant.

BIRD, J. In 1921 the city of Detroit paved that
part of Grand River avenue lying between the Joy road
and Wyoming avenue. A special assessment district
was created of the property benefited and an assessment was made to cover the cost. Plaintiffs, who
own property within the special district, seek, by their

On assessment of cost of local improvement made under
municipal authority against abutting owner who had made improvements on his own initiative, see note in 22 L. R. A. (N.
S.) 877.

bill, to enjoin the collection of the tax. Their claim is that in 1914, when this portion of Grand River avenue was in the township of Greenfield, it was improved by an 18-foot concrete pavement, by order of the county commissioners, and its cost was met by a bond issue of Wayne county. It is asserted by them that in view of these facts and the Detroit charter they should not be again assessed for a reconstruction of the road. The charter provision referred to reads:

"General road fund to defray the expenses of work within the lines of intersections of cross streets, the cost of crosswalks, of repaving, resurfacing, cleaning, sprinkling and repairing of streets, boulevards, highways, alleys and avenues, and the whole cost of paving between the tracks of street railroads, whenever the city has by contract or ordinance obligated itself to do such paving." Detroit City Charter, p. 131.

Plaintiffs argue that under this provision the work of paving this section was a repaving and must be paid for by general rather than by special assessments.

Defendant contends for the rule that until the street is improved as provided by the municipal authorities, and an improvement is made for which the property owners are charged, there is no original construction of the street, and that the abutting property may be taxed to construct the street, and this power of taxation is not affected until it is exercised. Defendant calls attention to the following provision of the charter:

"Whenever the common council shall order the grading and paving of any highway, street, alley, avenue or other thoroughfare, except boulevards, or the building of any sidewalks, or any other local improvement by which abutting or adjacent real estate shall be benefited, it shall thereafter ascertain the cost and expense of the same and thereupon cause such cost and expense, except the cost and expense of grading and

paving the intersection of cross streets and alleys and the cost and expense of building crosswalks and intersections of sidewalks, to be ratably assessed against the abutting or adjacent real estate to be benefited by such local improvement, according to the extent of frontage of the lots, parts of lots, or parcels of real estate directly fronting on the street in which the improvement is to be made and within assessment district for which provision is herein contained." Detroit City Charter, § 2, p. 113.

It appears that when this section of the highway was taken into and became a part of the city in 1915, it was improved with an 18-foot concrete pavement. Five years later the council ordered the pavement removed and moved the street railway into the middle of the street and constructed a 24-foot pavement on either side of the railway. It also appears to be conceded that this change was made to accommodate the increased traffic using this highway, due to the growth and development of the city.

Both counsel have filed helpful and convincing briefs. So far as we know it is a new question in this State. Some of the State courts appear to have settled the question adversely to plaintiffs' contention. In the Kentucky court a similar question was raised. *Sparks* v. *Paving Co.*, 129 Ky. 769 (112 S. W. 830, 22 L. R. A. [N. S.] 877, 130 Am. St. Rep. 492). The only difference between the facts in that case and the one we are considering was the fact that the improvement of the street before it became a part of the city of Louisville was made by a water company. In considering the case the court said:

"The rule as declared by this court in a number of opinions is that, until the street is improved as provided by the municipal authorities and an improvement is made for which the property owners are charged, there is no original construction of the street; in other words, the abutting property may be taxed to construct the street, and this power of taxa-

tion is not affected until it is exercised. *McHenry* v. *Selvage,* 99 Ky. 234 (35 S. W. 645) ; *Wymond* v. *Paving Co.,* 25 Ky. L. Rep. 1135 (77 S. W. 203) ; *Heim* v. *Figg,* 28 Ky. L. Rep. 396 (89 S. W. 301) ; *City of Catlettsburg* v. *Self,* 115 Ky. 677 (74 S. W. 1064) ; *Adams* v. *City of Ashland,* 26 Ky. L. Rep. 184 (80 S. W. 1105) ; *Lindsey* v. *Brawner,* 29 Ky. L. Rep. 1238 (97 S. W. 1) ; *Gast* v. *Minor,* 28 Ky. L. Rep. 1256 (91 S. W. 251) ; *Barfield* v. *Gleason,* 111 Ky. 491 (63 S. W. 964). * * * The cases differ in degree, but not in principle. The rule declared by the court rests upon the ground that, until the abutting property has once been compelled to bear the burden, the city has not constructed originally the street, which, in justice to all other property within the city and upon an equal basis under the statute, it should do. If appellants' contention were sustained, it would follow that Frankfort avenue might be constructed as an asphalt street at the cost of the adjoining landowners on certain squares, and could not be so constructed on other squares, although the city authorities had not before defined how the street should be constructed. If this were the rule, there could be no uniformity in the streets of the city, and persons who paid for the construction of an asphalt street in front of their property might not receive the benefits contemplated by law, because right by the side of them might be property owners who could not be required to pay, and either there could be no asphalt street constructed in front of them or it must be done at the cost of the city. If it was done at the cost of the city, the burden would in part fall on those who had already paid for the construction of their part of the street; and, if it was not so done, they would have no asphalt street. It is essential that the streets of the city must be uniform. To have uniformity, they must be regulated by the city authorities. There could be no uniformity if each property owner might improve the street in front of him, and thus forestall action by the city authorities directing how the street shall be constructed. As the city authorities have control of the streets, a street, in the meaning of the law, is not constructed until its construction is prescribed by the city authorities; and until it is so prescribed, and the

property holders are required to pay for constructing the street as required by the city authorities may be assessed against their property."

The same rule is announced in *Delaware & Hudson Canal Co.* v. *Buffalo*, 56 N. Y. Supp. 976, and affirmed in 167 N. Y. 589 (60 N. E. 1119). See valuable note on the question in 22 L. R. A. (N. S.) 877.

While the rule announced in the cases cited might, in some instances, appear to be inequitable, we think it is the better rule to follow. The charter provision evidently intended to confer upon the council the right to make the street and provide a special assessment to defray the cost thereof. And it has been held that a street is not originally constructed until it is improved at the cost of the adjoining property holders. *City of Louisville* v. *Stoll*, 159 Ky. 138 (166 S. W. 811). This right has never been before exercised by the council on this section of the highway. The improvement made by the county commissioners was paid for by a bond issue and will have to be paid by a general assessment of all the property in Wayne county. The plaintiffs will pay no more than any other resident of Wayne county similarly situated. If now we say they are exempt from this special assessment they are thereby placed in a more fortunate position than their neighbors, who may have resided upon an unimproved highway which was taken into the city at the same time. Another difficulty of applying the rule contended for by plaintiffs is how much of a rebate should plaintiffs receive. It would hardly be equitable to say that plaintiffs should pay no more than they have paid because then they would get their highway improved and pay no more than every other taxpayer in Detroit would pay. If they are to receive a rebate how much shall it be and who will authorize it? These and other considerations persuade us that the rule contended for.

by defendant is, under all the circumstances, the rule to follow where no special assessment has theretofore been made to improve the street.

The decree of the trial court is affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.