## City of Mt. Sterling v. Montgomery County, et al.

(Decided March 6, 1913.)

### Appeal from Montgomery Circuit Court.

1. Taxation—Exemption of Property of County From Assessment by the City for Street Improvement.—The public property of a county located in a city and used by the county for public purposes, is not subject to assessment by the city for local or street improvements unless the charter of the city expressly gives it the power to tax such property.
2. Taxation—Exemptions—Construction of Statute.—A provision in the charter of a city giving it general authority to tax abutting property owners with the cost of street improvements does not authorize it to tax the property of the county used for public purposes.
3. Taxation—Exemptions—Special Assessments.—Section 170 of the Constitution and Section 4026 of the Kentucky Statutes, enacted in pursuance thereof, providing that "public property used for public purposes" shall be exempt from taxation, does not apply to special assessments.
4. Property—Public Property Cannot Be Sold to Satisfy a Debt.—Public property used for public purposes, in the absence of express constitutional or legislative authority, cannot be sold to satisfy a debt of any kind.

W. B. WHITE, W. C. HAMILTON for appellant.

EARL W. SENFF for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In April, 1911, the board of council of the city of Mt. Sterling, a city of the fourth class, adopted in the manner required by law an ordinance providing for the original construction of certain streets within the city, among them being three streets on which abutted the property of the county of Montgomery occupied by its courthouse and other public buildings.

In pursuance of this ordinance a contract was let to do the work described in the ordinance, and upon its com-

pletion, and after it had been accepted by the board of council, a bill for $3,266, the cost of the improvement made on the streets abutting the property of the county, was presented to the fiscal court of the county and payment thereof demanded. Upon the refusal of the fiscal court to allow the claim or any part of it, or to make any provision for the payment of any part of it, this suit was brought by the city against the county of Montgomery and the members of the fiscal court, the prayer of the petition being for a judgment against the county for the amount of the claim, with a lien upon the property, and for a mandamus against the members of the fiscal court requiring them as a court to provide for the payment of the indebtedness.

The county of Montgomery and the members of the fiscal court entered a general demurrer to the petition, which was sustained, and declining to plead further, the petition was dismissed and the city prosecutes this appeal.

Neither in the lower court nor on this appeal is any question made as to the regularity of any of the proceedings of the council, nor is the amount of the claim questioned. The defense of the county and the fiscal court is rested distinctly on the ground that the city authorities were without power to charge the county with the cost of the improvement.

Section 3572 of the Kentucky Statutes, which is a part of the charter of fourth class cities, provides in part:

"The original construction of any street, road, alley, market place, lane, public square or grounds, wharves, levees or avenue may be improved by grading, macadamizing, paving with brick, granite or other material, curb and gutter, sidewalks and sewers, as may be prescribed in the specifications and ordinances at the exclusive cost of the owners of the lots and parts of lots or land fronting or abutting or bordering upon the grounds so improved, to be equally apportioned by the board of council according to the number of front feet owned by them respectively, upon the petition of the majority of the property owners of the lots or parts of lots or grounds abutting or bordering upon the ground to be improved." * * * *

Other related sections of the statute provide that the cost of the improvement shall be a lien upon the property, and describe the manner of its enforcement, but we do not find in the statute any authority for taking a per-

sonal judgment against the property owner for the cost of the improvement, the sole remedy being against the property itself upon which the improvement is a lien. This was expressly ruled in City of Catlettsburg v. Self, 115 Ky., 669, where the court said:

"Where the city directs, as it may, that such improvement be made at the exclusive cost of the abutting property, and the statute requires it to be borne in such event exclusively by the abutting property, the liability for the cost of the improvement is in no sense a personal one upon the city. The contractor must look alone to the property designated by the ordinance directing the improvement for pay for his work and materials. Gosnell v. City of Louisville, 104 Ky., 201; Becker v. City of Henderson, 100 Ky., 450." To the same effect is Adams v. City of Ashland, 26 Ky. L. R., 184.

We may also observe that section 170 of the Constitution, and section 4026 of the Kentucky Statutes, enacted in pursuance thereof, providing that "public property used for public purposes" shall be exempt from taxation, does not apply to special assessments like the one here in question. This constitutional and statutory exemption from taxation only refers to general ad valorem or property taxes that may be levied by the State, city, county or taxing district under authority of law. We have so ruled in Hager, Auditor v. Gast, 119 Ky., 502; Zable v. Louisville Baptist Orphans' Home, 92 Ky., 89; Gosnell v. City of Louisville, 104 Ky., 201.

We may further observe that it is admitted by the city that the fiscal court of Montgomery County did not authorize the making of the improvement, or in any manner obligate itself to pay the cost thereof.

With these preliminary matters out of the way, two questions are presented by the record for our decision: (1) Can the property of the county used for public purposes be subjected to the payment of the cost of the improvement? (2) If not, can the fiscal court be compelled by mandamus to provide a means by which it may be paid? The first of these questions may be readily answered in the negative. There is no statute authorizing or permitting this to be done, and we know of no authority that would justify it. On the contrary it is well established in this State, as indeed it is everywhere, that public property used for public purposes, in the absence of express constitutional or legislative authority, cannot be sold to satisfy a debt of any kind. Roe & Lyon v. Scan-

lan, 98 Ky., 24; Noonan v. Hastings; 101 Ky., 312; Allen County v. United States Fidelity and Guaranty Co., 122 Ky., 825.

This brings us to a consideration of the question whether or not the fiscal court of Montgomery County can be compelled by mandamus to provide for the payment of the cost of this improvement. It is said by Judge Freeman in the note to Board of Comissioners v. Ottowa, 33 Am. St. Rep., 396, that "Upon the question as to the power of a municipality to levy and collect an assessment as distinguished from a tax against public property, or property exempted by law from taxation generally, in cases when such assessment is made for the purpose of paying for a work of local improvement, as the grading of a street, the laying of a sewer, and the like, the authorities are in great conflict and perhaps about equally divided."

In Adams County v. City of Quincy, 130 Ill., 566, 6 L. R. A., 155, the Supreme Court of Illinois ruled that where the city improved the streets abutting upon property owned by the county, and on which its courthouse and public buildings were situated, it might compel the county authorities to appropriate funds to pay for the cost of the improvement. This decision was put upon the ground that in the absence of a statute exempting public property from the payment of a special tax levied for improvement, the county that owned the public property must pay for the improvement, although there was no statute expressly authorizing the burden to be put upon the county by the city.

In Edwards & Walsh Construction Co. v. Jasper County, 117 Ia., 365, 94 Am. St. Rep., 301, the Iowa Court, in holding that as there was no statute exempting from special assessment the property of a county occupied by its courthouse and public buildings, a city in which it was situated had the right to tax it as other property and compel the county authorities to pay the cost of the improvement, said:

"There is no reason why the county, the city, or the school district should not pay for the benefits received by it the same as any other property owner. Of course their property may not be sold but there is no reason why the amount of the tax may not be paid out of the treasuries of these institutions, and if the governing bodies fail to make payment, mandamus will compel them to do so. The county should, in our judgment, provide sidewalks in

front of its property, and when the city orders, pay its proportion of the cost of paving the streets."

In Board of Commissioners of Franklin County v. City of Ottowa, 49 Kan. 747, 33 Am. St. Rep., 396, the Kansas Supreme Court likewise held that as the statute did not exempt the property of the county from the payment of a street improvement tax, the county should be required to pay its proportion of the tax as any other property owner, saying:

"There is no exemption in the statute of a courthouse or other public grounds. Streets and sidewalks in front of or around a courthouse square or other public grounds should be kept in as safe condition by the city as other streets and sidewalks. It is not just that the other abutting lot owners pay the special assessments intended to improve or benefit the court house square. It is certainly unfair that the tax-payers of the city should pay for all the special improvements beneficial to the courthouse square when all the tax-payers of the county are equally interested therein."

On the other side of this question we find the Massachusetts Court, in Inhabitants of Worcester Co. v. Mayor and Aldermen, 116 Mass., 193, 17 Am. Rep., 159, laying down the rule that property of the county cannot be charged with the cost of a street improvement, the court saying:

"Its property constitutes one of the instrumentalities by which it performs its functions. As every tax would to a certain extent diminish its capacity and ability, we should be unwilling to hold that such property was subject to taxation in any form unless it were made so by express enactment or by clear implication. This property of the petitioners is not indeed in the legal form the property of the Commonwealth, but the authority by which the county holds it is derived from the statutes by which the duty is imposed upon the various counties of providing suitable courthouses, jails and houses of correction. When thus provided such estates, although held by the counties, are so held for the uses and purposes of the Commonwealth, are essential to the administration of the executive and judicial duties of its government, and are not to be deemed subject to taxation in any form unless the intent of the legislature to render them so clearly appears." In Board of Improvement v. School District, 56 Ark., 354; 35 Am. St. Rep., 108, a like conclu-

sion was reached; also in City of Lagrange v. Troup County, 132 Ga., 384, 16 A. & E. cases, 885.

In City of Big Rapid v. Board of Supervisors, 99 Mich., 351, in denying the power of the city to burden a county with the cost of special improvement abutting on the property of the county used for public purposes, the Michigan court said:

"Whenever the taxing power seeks to impose a tax upon such property it must be able to point to legislative or constitutional authority."

In City of Clinton v. Henry County, 115 Mo. 557, 22 S. W., 494, in holding the property of the county used for public purposes to be exempt from a special improvement tax imposed by the city, the court said:

"The property here in question is strictly public property, and on well settled principles of law cannot be held liable for these local improvement assessments until the legislature so says in clear terms, or by necessary implication, and that it has not done by the statute relating to cities of the third class. There is much merit in the argument that the public, the beneficial owner of the court-house property, ought, as a matter of fairness, to bear a part of the cost of improving the streets, but the argument addresses itself to the legislature."

There are many other cases that might be cited on both sides of this question, but the ones to which we have called attention are sufficient to illustrate the irreconcilable conflict in the opinions.

Coming now to notice what this court has said upon the subject, although there is no case directly in point, we find several in which the reasoning leads to the conclusion that public property used for public purposes cannot be charged with the cost of special improvements in the absence of a statute expressly authorizing the imposition of the tax.

In City of Louisville v. Leatherman, 99 Ky., 213, the question before the court was, could public school property be subjected to the payment of an assessment for the original construction of the street, and the court held that it could not be, putting its decision, however, upon the ground that as the constitution provided for a common school system and the creation of a fund to maintain it, no part of this fund could be appropriated to any other purpose.

In City of Louisville v. McNaughten, 19 Ky. L. R., 1695, it was sought to charge the Louisville Industrial

School of Reform, a public, city institution, with the cost of a street improvement. In holding that this could not be done, the court said:

"It further appears that this industrial school of reform was created or organized under a special act of the legislature and has ever since been used as one of the agencies of the State or of the city for the benefit of objects properly within the care or protection of the subject, and is practically one of the arms or the agents of the State, discharging one of the functions properly belonging to the State government, and it would seem unreasonable and contrary to the general principles of law to require one government agency to pay for the support or benefit of another."

In Kentucky Institution for the Blind v. City of Louisville, 123 Ky., 767, the city sought to require the institution, which was an agency of the State, to provide fire-escapes. In holding that the city, in the exercise of its police power, could not require the establishment of the fire-escapes, the court in the course of the opinion said:

"The courthouse in the city of Louisville, which belongs to Jefferson County, also an arm of the State government, and the custom house, which belongs to the federal government, are both included in the class described by this ordinance. It is not contended that the ordinance applies to them, though. It is said of the latter that the State had ceded to the federal government the jurisdiction of that building, whilst as to the courthouse it has been held, it is said, that a county cannot be sued for any purpose unless the authority be expressly given by statute. But both the custom house and the courthouse are exempt from the effect of the ordinance for the additional reason, and a sufficient one we think, that the State as to the courthouse has given the control and management of it to a different set of public officials, and by cession to the federal government has likewise left it to that government to control its building. The principle is that the State, when creating municipal governments does not cede to them any control of the State's property situated within them, nor over any property which the State has authorized another body or power to control. The municipal government is but an agent of the State, not an independent body. It governs in the limited manner, and territory that is expressly or by necessary implication granted it by the State."

In these opinions the power of the State to create sep-

arate, distinct governmental agencies free from the control and supervision of other governmental agencies, each acting independently of the other unless otherwise provided, is recognized. And arising out of this distinction and the separate rights incident to it we may deduce the principle that one governmental agency of the State cannot impose any burden upon another governmental agency of the State in the absence of express authority from the State to do so. It is not so much a question of the exemption of one governmental agency from the control of another as it is a lack of power upon the part of one to interfere with the concerns of the other without express authority so to do.

The city of Mt. Sterling and the county of Montgomery are each creatures of the State. They were established by it and invested by it with such power and authority as might enable them to administer the share of governmental power committed to their care. Each in its way, within its limitations, performs in the sphere set apart to it the duties for which it was created; but it was not contemplated that either should take from the other any part of its governmental authority by virtue of any implied power.

We do not, of course, doubt that the State might have conferred on the city the authority here sought to be asserted, and which involves the right of the city to burden without its consent the county with a debt; but the question is, did the State grant this power to the city? That it did not do so by express grant is clear, and we think it does not follow as an incidental or implied power from the powers granted. The rule that certain things follow as a necessary implication from those granted that is freely applied in the administration of the affairs of municipal government in dealing with individuals or the public generally, should not be applied in its dealing with another separate distinct agency of the State. The city and the county must be presumed to retain each to itself the exclusive power to incur indebtedness and raise money by taxation, and it is not to be inferred that it was intended to transfer to the city a part of the governmental power of the county that carried with it the right to raise money by taxation from the people of the county.

We are referred by counsel for appellant to the case of Hager, Auditor v. Gast, 119 Ky., 502, as supporting the proposition that the county should be required to pay the cost of this improvement. But that case does not

go this far. It appears from the opinion that the city of Louisville improved streets adjoining property occupied by the Kentucky Institute for the Blind, a public State institution, and brought a suit against the State to recover the cost of the improvement. This suit was defended by the State upon several grounds, one of them being that the city had no right to impose a burden upon another agency of the State for street improvement. But we held that the State must pay the claim of the city because the statute expressly provided that any property situated in the city owned by the State or held in trust by it for public use should bear its proportionate cost of public improvements the same as other property owners; and further provided a method by which the cost of the improvement might be collected. It will thus be seen that in the Hager case there was express authority granted to charge the other agency with the cost of the improvement.

The case of Allen County v. United States Fidelity & Guaranty Co., 122 Ky., 825, is also relied on. In that case we held that a county that had made a contract for the erection of a courthouse must pay the laborers and material-men who performed work and furnished material in the erection of the building; but this case proceeded altogether upon the theory that the county had authority to enter into a contract for the erection of the courthouse and the authority to raise money by taxation to pay the cost of the improvement, and therefore could not relieve itself from liability to the people who did the work merely because they could not enforce their liens by a sale of the property.

Upon the whole case our conclusion is, that in the absence of express authority conferred by the statute, one public agency of the State cannot impose burdens in the way of indebtedness upon another public agency of the State without its consent, and therefore the judgment of the lower court is affirmed. Judge Turner not sitting.