## City of Louisville et al. v. Cromwell, Treasurer, et al.

(Decided March 28, 1930.)

(As Modified, on Denial of Rehearing, May 16, 1930.)

WM. G. DEARING, WM. T. BASKETT and JOHN E. TARRANT for appellants.

J. W. CAMMACK, Attorney General, and CLIFFORD E. SMITH and GEO. H. MITCHELL, Assistant Attorneys General, for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

Section 3 of our Constitution says in part, "No property shall be exempt from taxation except as provided in this constitution;" and section 170 of the same

instrument also says in part, "There shall be exempt, from taxation public property used for public purposes . . . institutions of purely public charity. . . . ."

Section 4224b-1, which is a part of chapter 127, p. 427, of the Session Acts of 1928, enacts in part: "A state tax of five (5) cents per gallon is hereby imposed on all gasoline, as defined herein, sold in this Commonwealth at wholesale, as the words 'at wholesale' are hereinafter defined. No other excise or license tax shall be levied or assessed on gasoline by the State or any county, city, town or other district. The tax hereby provided for . . . . shall be paid by said person, firm, association or corporation into the general fund of the State Treasury in the manner and within the time hereinafter specified. The words 'at wholesale' as used in this act, shall be held and construed to mean and include any and all sales made for the purpose of resale or distribution, or for use, and, as well, the gasoline furnished or supplied for distribution within this State, whether the distributor be the same person who so furnished the same, his agent or employee, or another person; and also to mean and include any person who shall purchase or obtain gasoline without the State and sell or distribute or use the same within the State."

This declaratory judgment action was filed in the Franklin circuit court by the appellant and plaintiff below, city of Louisville, against the wholesale dealer with whom it had a contract to furnish it gasoline to be used in its various motor transportation vehicles in the performance of its purely governmental functions, and against certain state officers having duties to perform with reference to the collection of the gasoline tax, for the purpose of having it determined whether plaintiff was and is exempt from the payment of that tax under the provisions of section 170 of the Constitution supra. A demurrer to the petition as amended, filed by the official defendants, was sustained, and, plaintiff declining to plead further, its petition was dismissed, and all of which was upon the ground that plaintiff was not entitled to the exemption contended for by it; and, to reverse that judgment, it and its wholesole dealer, who also insisted on the exemption, prosecute this appeal.

It seems to be the universal rule, and which is admitted by counsel for both sides in this case, that

exemption from taxation is a matter of grace, to be granted or withheld by the sovereignty levying and collecting the tax either by constitutional or statutory provisions. If the Constitution is entirely silent on the subject, thereby placing no restrictions on the Legislature, the latter may legally grant exemptions in the form of a duly enacted statute, and which principles are necessarily true and result from the power to prescribe what property shall be taxed, since the exercise of that power implies also the power "to prescribe what property shall be exempt, and in the absence of a special constitutional provision to the contrary, the legislature may exempt such classes of property (or persons) from taxation as in its opinion the public policy of the state requires." 26 R. C. L. 297, sec. 262. We repeat, the above statement of the law is everywhere recognized, and we need not incumber this opinion with further citations in its support, since it inheres in the very fundamental principles of self-government which acknowledge no superior authority over the people who compose it, and, unless they in their fundamental charter or Constitution have prescribed otherwise, the legislature in the exercise of the power delegated to it may provide for such exemptions from taxation as it sees proper.

However, sections 3 and 170 of our Constitution do contain restrictions upon the power and authority of the Legislature to grant exemptions from taxation. Section 3 of that instrument expressly inhibits such exemptions, except such as may be prescribed in other parts of that instrument, and the only other part in it referring thereto is section 170. Unless, therefore, the right to the exemption claimed by plaintiff is given by the latter section of the Constitution, it clearly has none, and in which event the judgment appealed from was and is correct and should be affirmed.

It is the contention of the defendants representing the commonwealth, which reap the entire benefit of the taxation involved, that section 170 of the Constitution applies and refers to *only* ad valorem taxes levied upon the assessed valuation of property of the owner, and, being so, its provisions exempt the public *property* of municipal corporations, of which plaintiff is one, and that it has no application whatever to license, franchise, occupation, or excise taxes authorized to be levied and col-

lected under section 181 of the Constitution; while plaintiff contends to the contrary, and which presents the sole question for determination.

"The general rule applicable to asserted rights of exemption from taxation is that the language of the instrument conferring the exemption must be strictly construed, since the right is a carved out one for the benefit of the claimant and which is not enjoyed by the inhabitants generally, and it is therefore a species of conferred special privilege which must be clearly stated and set forth before it will be given. 26 R. C. L. 313, sec. 274, and Cooley on Taxation (4th Ed.) vol. 2, p. 1403, sec. 672. All other writers and courts when dealing with the subject apply the general rule as so stated, but Mr. Cooley, on page 1414, sec. 673, of his same work, says that, while some jurisdictions apply such strict construction rule to exemptions of municipal property, "the better rule is that strict construction of exemptions statutes apply to exemptions of property held in private ownership, but not to exemptions of public property." In support of the application of the strict construction rule to such property, the learned author cites the case of Board of Directors of Stimson Memorial Library v. Board of Review of Union County, 248 Ill. 590, 94 N. E. 153, and, in support of the nonapplicability of the strict construction rule to such property, he cites the cases of Pasadena v. Los Angeles County, 182 Cal. 171, 187 P. 418, State v. City of Columbia, 115 S. C. 108, 104 S. E. 337, and Commonwealth v. City of Richmond, 116 Va. 69, 81 S. E. 69, L. R. A. 1915A, 1118. In this case it is unnecessary for us to determine the seeming conflict in that regard, or to adjudge which one of the two holdings we will adopt, since, if we should align ourselves with courts holding to the latter construction (i. e., that it should not prevail as to exemptions from taxation of municipal property), then we would still be bound by the interpretation of this court as to the character of taxes referred to and included in section 170 of our Constitution, wherein only is found the right to the exemption claimed by plaintiff in this case.

Preliminary to references to former opinions of this court bearing upon the question, it might be appropriate to state generally that taxes are divided into various sorts and kinds, outstanding among which are ad valo-

rem taxes, while others are franchise and license taxes, excise taxes, special taxes, and other subdivisions or classifications unnecessary to mention. Independently of any prior interpretation of section 170 of our Constitution, its language and that of its sections 171, 172, and 174 would appear to exclusively deal with only ad valorem taxes, and the language of section 170, under which the right claimed here is asserted, is with reference to a tax levied upon *property*, for it says, "There shall be exempt from taxation public *property* used for public purposes." In the next section (171) the General Assembly is required to provide for an annual tax to be collected for public purposes only, which "shall be uniform upon *all property* of the same class subject to taxation," etc. Further along in that section the Legislature is given the right of classifying *property* subject to taxation, and it then speaks of the rate of taxation that shall be assessed against the valuation of the *property* subject to the tax. The next section (172) provides for the assessment of *property* for the purpose of taxation "at its fair cash value," etc. Clearly the taxes referred to in those three sections is a percentage amount assessed against the valuation of *property*, and which is essentially an ad valorem tax; while section 181 of the same Constitution confers authority and power upon the General Assembly by general laws only to provide for and collect other kinds or classes of taxes designated "license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax."

In section 276, p. 315, 26 R. C. L., the learned compilers state the general rule with reference to the application of exemption provisions relieving from taxation thus: "An exemption from taxation applies primarily to the annual general property (ad valorem) tax, whether it is to be extended to other classes of taxes depends upon various circumstances. Thus it does not ordinarily apply to excises, especially to such as are not in lieu of property taxes, but are imposed upon the enjoyment of a privilege." See, also, the text to the same effect in Cooley on Taxation, supra, vol. 4, sec. 1671, p. 3377, same volume, section 1695, pp. 3388, and same volume, section 1695, pp. 3406 and 3407, and in the same volume sections 1712, 1719, 1726, 1951. The text in section 1671, p. 3377, referred to, says, inter alia: "Prop-

erty and excise taxes are governed to a considerable extent by different rules. Many of the constitutional provisions apply only to *property* taxes including such provisions as those requiring equality and uniformity of taxation," etc. And the text in section 1681, p. 3389, says: "Provisions in state constitutions relating to taxes are generally held applicable only to *property* taxes." In the section 1719, referred to, the text says, "Inheritance taxes are governed by rules having little or no application to *property* taxes, and are sui generis;" and section 1712, p. 3428, of the same volume, says, "Exemption from taxation of all *property* of municipal corporations does not exempt a city from a license tax. In section 1751, p. 3485, it is distinctly pointed out that constitutional provisions and limitations applicable to *property* taxes are not applicable to an income tax, unless it should appear that the latter tax is placed in the same category of a *property* tax. The other references to the latest work of the learned author recognized the clear distinction between ad valorem and other classes of taxation and that an exemption from payment of the former class of taxes does not extend to and include either of the latter classes. (The emphasis on the word "property" in above excerpts is ours.)

In volume 2, sec. 689, pp. 1444 to 1451, Mr. Cooley in his work supra states that the rule of strict construction applicable to rights of exemption from taxation applies, not only to the existence of the right at all, but likewise to its scope; i. e., the character of taxes to which the exemption applies. So that, although the right may be clearly given as to a particular class of property, still, unless the exempting language be such as to extend it to all classes of taxes, it will be confined to the one wherein it is so clearly made to appear. With the law in the condition, as so declared by the cited text authorities, we repeat that it would seem to clearly appear, under the strict construction rules above referred to, that the exemption provided for in section 170 of the Constitution refers only to ad valorem taxes.

But we need not depend upon the above reasoning and analogies for arriving at that conclusion. In the cases of Strater Brothers Tobacco Co. v. Commonwealth, 117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717, we expressly held that the tax referred to in section 170, and its immediately following sections, was and is an ad valorem tax; while the taxes provided for in section 181

belong to other and different classes. To the same effect are the opinions in the cases of Hager, Auditor, v. Gast, 119 Ky. 502, 84 S. W. 556, 27 Ky. Law Rep. 129, and City of Mt. Sterling v. Montgomery County, 152 Ky. 637, 153 S. W. 952, 44 L. R. A. (N. S.) 57. In the Gast opinion it was held that the exemption provided for in section 170 did not extend to a special assessment tax, which is another classification of taxes that the Legislature may authorize, and necessarily that was done upon the theory that section 170 referred only to ad valorem taxes. See, also, our opinions in the cases of Corbin Young Men's Christian Association v. Commonwealth, 181 Ky. 384, 205 S. W. 388, 1 A. L. R. 264, and Sage's Executor v. Commonwealth, 196 Ky. 257, 244 S. W. 779.

The opinion in the first (Corbin, etc., case) of the last two cited cases is enlightening upon the question here involved. The Young Men's Christian Association in that case was operating a restaurant upon some of its property located in the city of Corbin, and it sought exemption from the license or occupation tax levied against that business or occupation. The only exemption, as we have hereinbefore pointed out, was and is contained in section 170 of the Constitution, and it was contended by the commonwealth that it did not apply, since the exemption therein allowed applied only to ad valorem taxes. But the opinion disallowed that contention upon the ground that, as to the association, against which the license fees were assessed and from which it was sought to be collected, was "a purely public charity," and that the exemption allowed such charitable institutions by section 170 applied to them *personally,* and not to any particular kind of taxes levied upon any of their property (but which latter is true with reference to the exemption claimed in this case, which is that against plaintiff's "public property"), and is not an exemption of the owner of that property from payment of other taxes, levied against him or it. Under such construction, the exemption in favor of a "purely public charity" in section 170 was construed to extend to the license taxes there involved, since the exemption right was a *personal* and not a *property* one. The opinion in the 181 Ky. Y. M. C. A. case, in drawing the distinction above stated, by necessary implication held that, if the exemption applicable to institutions of purely public charity had extended *only* to their *property,* as is true with reference to the right claimed in this case, the exemption

upheld therein would have been disallowed, and the judgment, instead of being reversed, would have been affirmed.

In the two recent cases of Metropolis Ferry Co. v. Commonwealth, 225 Ky. 45, 7 S. W. (2d) 506, and Shanks v. Independent Oil Co., 225 Ky. 303, 8 S. W. (2d) 383, we classified the gasoline tax as an *excise* one, and that it was levied against and collected from dealers in gasoline; but in the Metropolitan Ferry case we held that it was also to be levied against and collected from the consumer of gasoline. *when* he purchased it out of the state and consumed it within the state, and which was and is in compliance with the express provision of section 4224b-1, supra, of our Statutes.

Under the condition of the law as thus declared, it would seem superfluous to discuss the opinions of courts in other jurisdictions, either state or federal, since the law as declared in this jurisdiction leads inevitably to the conclusion that plaintiff is not entitled to the exemption it claims. If it were otherwise, then the city would be exempt from paying the tax levied by statute upon the filing of suits on amounts above $50, and would also be exempt from paying the appeal tax fee collected on appeals to this court. It would likewise be exempt from paying any inheritance, legacy, or succession tax that might be levied in cases when some patriotic citizen should devise it property, and the same would be true as to the enhanced price put upon commodities by dealers therein in order to recoup the amount of occupational or excise taxes that they have been required to pay. The same logic urged in support of plaintiff's claimed exemption would also entitle it to claim exemption from paying the enhanced value of any article it might purchase in the discharge of its governmental function and which enhancement was because of general ad valorem taxes that the person or dealer from whom the purchase was made may have placed on the selling price, and the principle so contended for would thus produce, in the attempted enforcement of the exemption, such entangled and confused conditions as to be practically incapable of enforcement and which it might be well presumed that the Legislature never intended to create.

If the gasoline excise tax involved in this case was, by the statute, imposed directly upon the consumer (but which we have seen is not done, except when purchased outside of the commonwealth and consumed within it),

then, perhaps, there might be greater logic for the support of counsel's contention. At least the opposing presumption against it because of the above-mentioned confusion and difficulties in allowing the exemption would be eliminated thereby, to some extent.

It also should not be overlooked that the involved tax is levied and collected solely by and for the benefit of the commonwealth and not by any municipality or other subdivision of the state. The proceeds go to make up the principal part of a fund to meet a supremely necessary purpose of modern creation, i. e., the construction and maintenance of roads of sufficient capacity to meet the requirements and necessities of modern vehicles of travel. The statute is so devised as to distribute the burden of contributing to that fund in the most equitable and just manner possible. The roads are built and maintained for the use of the vehicles that consume the gasoline. The larger and heavier ones consume more of the taxed product than the lighter ones, and the heavier the vehicle the more damage it does to the roads and the greater the necessity for their increased substantiality. So that every one contributes in proportion to his use of the roads and in proportion to the corresponding damage done to them by such use. Counties, municipalities, and other taxing districts use them in the manner indicated the same as private individuals, and the involved tax is expended to enable the state to construct and maintain them for the use of such municipal authorities as much so as it is done for the private citizen, and under such circumstances it appears to us that a case is presented that requires the strict construction rule supra against the claimed exemption. In other words, that, unless there is something in the involved constitutional or statutory provisions, reasonably indicative of an intention to allow the exemption contended for, it should be disallowed, and some of the cases and authorities supra expressly so hold.

Moreover, sections 2739g-1 to and including section 2739-69 of our present statutes, relate, in part, to the registration and license fees of motor vehicles, the collections from which also form a part of the state road fund. But by the provisions of section 2739g-7 such vehicles "owned exclusively by any county, city, town or board of education in the state, or by the state or federal governments," are expressly exempted from paying any registration fee or from paying for any plate evidencing

such registration. In other words, such owned vehicles may be registered free of charge and may receive plates evidencing that fact without cost. If it had been the intention of the Legislature in levying and providing for the gasoline tax, under the inserted statutes supra, to exempt municipalities, counties, etc., from its payment, it is strange that it did not so provide in the statute, since it took the precaution to do so in the enactment of the other statute looking to the raising of funds for the same purpose, and that fact is sufficient, we conclude, to overcome any such presumption of exemption as is urged by counsel for plaintiff in behalf of his client and to support which the case of the City of Louisville v. Commonwealth, 1 Duv. 295, 85 Am. Dec. 624, is largely relied on.

That case was decided under our 1850 Constitution, in which there was no specific or expressed exemption of *public* property from taxation. It was corporeal property that was sought to be taxed in that case and the tax was strictly ad valorem. Notwithstanding there was no provision in the Constitution, or any statute, the court reached the conclusion that the property of the city was exempt from ad valorem taxes upon the ground that neither the state nor a municipality (which it was held was assimilated with the state and an agent of it for the performance of local sovereign duties) was a *person* within the meaning of the constitutional and statutory provisions levying taxes against the property of *persons,* and that conclusion was reached mainly because there was nothing in the Constitution or the statutes to indicate that the state or such subordinate agencies were to be embraced or included in the word "persons" to be taxed. But, however that may be, our present Constitution in its section 3, supra, mandatorily prescribes that "no property shall be exempt from taxation except as provided in the constitution," a provision not found in the constitution of 1850, nor did it contain any similar one. The excerpt from that section is broad enough to and does include all the property within the jurisdiction of the state, regardless of who owns it, and were it not for the language supra in section 170 of the same instrument all corporeal and other property subject to be assessed for ad valorem taxes by whomsoever owned would be liable therefor. It is therefore clear that the constitutional convention did not exempt any one from the payment of authorized taxes, although such one might

be a municipal corporation, except in the instances and cases expressly provided for in section 170.

However, it should not be overlooked that the opinion in the Duvall case (1 Duv. 295), on another question determined therein as to what character or use of municipal property was exempt from taxation, is criticized by Mr. Dillon in his work on Municipal Corporations, section 774, and which criticism was approved by this court in the case of City of Owensboro v. Commonwealth, 105 Ky. 344, 49 S. W. 320, 20 Ky. Law Rep. 1281, 44 L. R. A. 202, and that criticism was referred to by us in the recent case of Board of Councilmen v. White, 224 Ky. 570, 6 S. W. (2d) 699. The ruling of the court in the Duvall opinion on the point that was so criticized has long since been departed from, and the very municipal property which it held was not exempt from ad valorem taxes is now and has long since been held to be so. If that opinion was wrong and faulty upon that particular question, it might also be so on the question here involved, and which latter determination therein is now relied on by counsel for plaintiff. But because of the differences hereinbefore pointed out we do not now express any determination upon the soundness or unsoundness of that opinion on the question here involved.

But it is said that the Supreme Court of North Carolina, in the recent case of O'Berry v. Mecklenburg County, 198 N. C. 357, 151 S. E. 880, in a similar action brought by a county to obtain the same relief sought by plaintiff in this case, exempted the county from the payment of the same character of taxes here involved. There is some difference between the applicable constitutional and statutory provisions of North Carolina, involved in that case, and the same provisions prevailing with us, and which might account for the conclusion reached by that court; but, whether so or not, and assuming that the case is directly in point and without any distinguishing features from this one, we would then be unwilling to adopt its conclusions or to accept the reasoning of the court in support thereof, and that, too, in the absence of other opinions from other courts of last resort directly to the contrary. That opinion refers to and cites such contrary opinions without comment and without any effort to distinguish them from the case then being considered by that court. The cases, the opinions in which adopt the views and announce the conclusions herein expressed, are City of Portland v. Kozer, 108 Or. 375,

217 P. 833, 836; Crockett v. Salt Lake County (Utah) 270 P. 142, 144, 60 A. L. R. 867; and People v. City and County of Denver, 84 Colo. 576, 272 P. 629.

In the City of Portland case the opinion referred to, among other things, the fact that there was no express exemption in the statute creating the tax on gasoline of municipalities, as was true in other sections of the statute with reference to registration fees the same as we have herein referred to supra, as one reason for its disallowing the exemption, and the court expressed its final conclusion in this language: "To grant the prayer of the plaintiff city, and relieve the several municipalities of the state as desired by plaintiff, would leave the statutes in question like mere skeletons for all practical purposes; a condition that the lawmakers never intended. A statute should not be so construed to render it absurd, if it is susceptible of another construction which would avoid the absurdity. Standard Oil Co. v. Brodie, 153 Ark. 114, 239 S. W. 753."

The Utah court, in the Crockett case, after reciting that the claimed exemption right was not expressly given, and if it existed at all it was by implication or through the operation of a presumption, both of which it discarded, reached the same conclusion as did the Oregon court, and in doing so said, inter alia: "It thus appears that the tax is not for the purpose of raising revenue for the payment of the usual and ordinary expenses of state government, but for the construction and maintenance of public highways. These highways are open, not only for the use of the citizens of the state, but for others traveling within the state and for the counties and cities in the discharge of their public duties. While it is true the statute does not expressly provide that the municipalities of the state shall be subject to the tax, nevertheless there is no provision or language found in the act which indicates the intent of the Legislature to exempt or relieve counties or cities from paying the tax imposed on all who use motor vehicle fuels for vehicles, engines, or machines, movable or immovable, within the state. On the contrary the admitted purpose of the legislation and the directions contained in the act as to the disposition of the funds so raised not only fail to indicate an intention on the part of the Legislature not to exempt municipalities from payment of the tax, but negative any inference that such municipalities were intended to be relieved from the payment of the tax."

In conclusion, it might be observed that since and including 1920, six Legislatures of this state have enacted statutes providing for the collection of a gasoline excise tax. The public agencies intrusted with their administration have *construed* them so as not to allow the exemption herein claimed and to require the persons authorized by the statutes to be taxed to pay the statutory assessment, including municipalities and other public subdivisions of the state, and with that interpretation, publicly known, no Legislature has seen proper to offer, much less enact, any amendment excusing such governmental agencies from paying the tax, and which is clearly indicative of no such intention and purpose on the part of the Legislature and evidences a legislative construction of the involved constitutional provision. If either the terms of such latter provisions, or those of the involved statute, were doubtful in their meaning and purpose, such contemporaneous construction would receive its proper weight in this court. However, we do not conclude that the language of either is doubtful or ambiguous, but if otherwise, then we find that the state officers administering the law and the members of the Legislature have resolved that doubt against plaintiff's contention.

Upon the whole we are clearly convinced that the judgment denying the exemption was and is proper, and it is accordingly affirmed.

The whole court sitting.