CAREY-REED COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83936.   Promulgated June 8, 1937.

*Jesse I. Miller*, *Esq.*, for the petitioner.
*Paul A. Sebastian*, *Esq.*, for the respondent.

### OPINION.

SMITH: The respondent determined a deficiency in petitioner's income tax for 1933 in the amount of $1,394.75, a part of which resulted from adding to the income reported by the petitioner interest received on the bonds of municipalities which were payable, interest and principal, exclusively out of collections of special taxes levied against the benefited property. The petitioner contends that the amount is tax exempt as interest received on obligations of a political subdivision of a state.

The petitioner is a corporation, with its principal office at Lexington, Kentucky. It was organized in 1911 for the purpose of engaging in the business of street and road contracting. Prior to 1933 the petitioner contracted to make certain street, paving, and sewer improvements in the municipalities hereinafter mentioned and prior to 1933 received in part payment for said improvements, and owned during 1933, bonds of the following descriptions and in the following amounts, these bonds representing the balances of the total issues of such bonds:

| City | Kind | Amount |
|------|------|--------|
| Marion | Street improvement | $50,087.22 |
| Marion | Sewer improvement | 71,924.11 |
| Princeton | Sewer improvement | 87,283.52 |
| Winchester | Paving improvement | 6,846.40 |
| Wilmore | Street improvement | 10,417.71 |

During 1933 interest on the above described bonds was received by the petitioner in the amount of $10,143.64, none of which interest was reported by the petitioner as taxable income for 1933.

The cities of Marion, Princeton, Winchester, and Wilmore are political subdivisions of the Commonwealth of Kentucky, the first three being cities of the fourth class and the last named a city of the fifth class, as defined by the Kentucky statutes.

Street and paving improvement bonds of the cities of Marion and Winchester were issued pursuant to the provisions of sections 3563, 3574, 3575, and 3577 of the Kentucky statutes.

By section 3563 it is provided, so far as is here material, that the city council may by ordinance provide for improvements of streets and sidewalks, which improvements shall be made at the exclusive cost of the abutting property owners, such cost to be apportioned and assessed against the abutting real estate on a front foot basis and that:

* * * a tax shall be levied upon such lots or parcels for the payment of the cost assessed thereon, which tax shall be due and payable at the city treasurer's office upon the completion of the work and acceptance thereof by the board of council, unless otherwise provided in the ordinance ordering such improvement, and no property shall be exempt from such improvement tax. * * *

If the tax is not paid within 30 days after it has become due a 10 percent penalty is added and "There shall be a lien upon such lots or parcels of real estate" for the tax thus assessed.

Any assessment for street improvements which exceeds one-half of the value of the real estate is void as to any excess and the council "shall provide for the payment of any such excess out of the general fund."

The city treasurer is required to keep a record of all assessments of local improvement taxes, showing the location and character of each and the names of the persons against whose property the assessments have been made. Upon payment to the city treasurer of any such assessment he must make a proper entry on his records, whereupon the lien for such assessment stands released. All local taxes thus paid "shall, from time to time, be paid over to the contractor or other person entitled thereto, upon order of the board of council.

The treasurer must keep a separate account of the funds arising from each improvement and no special taxes for one improvement can be diverted to the payment of any other improvement, the taxes in each case constituting a separate special fund for the payment of the particular work or "for the security and payment of improvement bonds, if any are issued, as provided in section 3577 for such improvement."

The board of council of any city of the fourth class "may provide by general ordinance that such city shall pay part, and if so, what part of the cost" of any such local improvements, such provision, however, not to be changed except at intervals of 10 years or more.

Section 3574 provides for hearings prior to the city's acceptance of any improvement when completed and for the apportionment and assessment of the special tax and the creation of a lien to secure it.

38

"Such liens may be enforced, as other liens on real estate, by action brought in the name of the city or the contractor entitled thereto."

Section 3575 provides for the payment for special improvements on the 10-year plan. After the tax has been assessed the abutting property owners are given the option of paying the tax in cash within 30 days or in 10 annual installments with interest. Written acceptance of the 10-year plan must be filed within a specified time and, after it is filed, all defenses to the tax are thereafter precluded. If any installment is not promptly paid:

\* \* \* the tax bills for such special assessments may, in addition to the other remedies given in this act, be sold and collection thereof enforced in the manner provided by law for the collection of municipal taxes. \* \* \*

If the fund accumulated for any particular improvement is more than sufficient to pay the principal and interest on the bonds which may be issued in anticipation of the collections the board of council may ratably reduce the property owner's assessments.

\* \* \* Should there be any deficit, the council may provide for payment of same out of the general fund. Failure on the part of the city to collect any such local tax or installment thereof, when due, shall create no liability against such city, but the person entitled to such tax, or the owner of any such bonds, shall have the right to proceed in any court of competent jurisdiction to foreclose the lien for such unpaid assessments, recovering interest and costs, and may have the proceeds of the property applied in settlement thereof.

Section 3577 provides:

\* \* \* In order to provide a fund for the immediate payment of the cost of any improvement made on the installment payment plan as provided in section 3575, the council may issue and sell improvement bonds *in anticipation of the collection* of such part of the local taxes assessed and levied therefor as may not be paid within thirty days from the time of the assessment, *pledging such taxes and the liens on the property for the payment of the principal and interest of such bonds,* and apply the proceeds thereof exclusively to the payment for the particular improvement *in anticipation of the assessment for which the bonds are issued.* \* \* \* [Italics ours.]

This section further provides:

\* \* \* Said bonds and interest thereon shall be payable exclusively out of funds actually paid to and collected by the city on account of the improvement taxes in anticipation of which the bonds are issued, and except as provided in this section, *the city shall in no event be liable on any such bond except to the extent of funds actually paid to it as above set out.* \* \* \* After the issue of such bonds no suit shall lie to enjoin or resist the collection of any assessment or tax in anticipation of which the bonds are issued, and the validity of the same shall not be questioned, but all property owners shall be conclusively estopped and precluded from in any manner assailing the effectiveness or validity thereof. Such bonds shall convey and transfer to the owners thereof all lien, right, title and interests in and to the assessments, taxes and liens upon the respective lots and parcels of ground, \* \* \* which liens shall stand as security for such bonds and coupons until they are paid,

with full power to enforce the collection thereof, if such bonds or coupons be not paid on presentation to the treasurer, by foreclosure in any court of competent jurisdiction as provided in section 3574. * * * [Italics ours.]

The sewer improvement bonds of the fourth class cities of Marion and Princeton involved herein were issued pursuant to section 3579 a–2 of the Kentucky statutes, which authorizes sewer improvements by cities of the fourth class and payment therefor by the same procedure and in the same manner as provided for street and paving improvements as above set out. The street improvement bonds of the city of Wilmore, a city of the fifth class under Kentucky statutes, were issued pursuant to sections 3643–1 to 3643–9, inclusive, of the Kentucky statutes. In substance they make the same provisions as to improvements and payments therefor as in the case of cities of the fourth class, with the two following exceptions:

(a) Section 3643–1 permits special improvements to be paid for entirely out of general funds and not out of special assessments "as the board of council may in each case determine", whereas fourth class cities may pay for such improvements out of general funds only when all such improvements are to be paid for out of general funds. The city of Wilmore bonds involved herein are payable only out of special taxes.

(b) Section 3643–7 provides that when there is any default in payment of a bond issued by a fifth class city, the court action to enforce payment "shall be prosecuted in the name of the city." The corresponding provision relating to fourth class cities (section 3577) provides inferentially that either the city or a bondholder may institute a suit to enforce payment, but that the proceeds of the suit "shall be paid into the city treasury to be applied to the redemption of matured bonds in the same manner as if the same had been paid without suit."

The material provisions of all the bonds, whether issued by fourth or fifth class cities, are substantially identical. Each bond of a fourth class city provides that, on a date certain:

The City of _____, a municipal corporation of the State of Kentucky promises to pay to the bearer the sum of $_____ in lawful money of the United States, with interest thereon from and after the date hereof at the rate of 6% per annum payable semi-annually on _____ on the presentation and surrender of the interest coupons hereto attached as they severally become due, the first payment of interest being due _____. This bond is issued in anticipation of the collection of special taxes duly levied and assessed by ordinance of the City of _____ adopted by the City Council on _____ upon and against the several lots and parcels of real estate abutting on [here is a description of the location of the abutting property against which the assessment is made] as set out in an ordinance adopted by the City Council on _____ ordering certain improvements and an ordinance adopted by the City Council on _____ approving certain improvements and assessing certain taxes in said city, for the payment of the

cost of the construction of [here is stated the nature of the improvement] and the payment of the principal and interest hereof is secured by pledge of said special assessments and taxes and the liens therefor.

The principal and interest of this bond are payable at the office of the Treasurer of the City of —————————— exclusively out of funds actually paid to and collected by the City on account of said special taxes. If any installment of the special taxes on account of which this bond is issued is not paid when due, the City agrees to file suit for the collection thereof and to use reasonable diligence in prosecuting said suit * * *.

This bond and the coupons hereto attached are issued pursuant to the provisions of Section ——— of Carroll's Kentucky Statutes, 1930, edition and pursuant to the provisions of the ordinance of the City of —————————— adopted by the City Council on ————————————.

All proceedings for the issuance of this bond have been had in due form as required by law essential to the validity thereof and been duly complied with.

Each bond is signed by the mayor and city treasurer, the municipal seal is affixed thereto, and it is attested by the city clerk.

The city of Wilmore (fifth class city) bonds are the same except that the paragraph relating to suits to enforce payment is omitted.

The ordinance of the board of council covering the sewer improvements at Marion, Kentucky, provided that the improvements should be made at the expense of abutting property owners; that bonds would be issued in order that assessment might be made on the 10-year installment plan in accordance with section 3577 of the Kentucky statutes; that bonds should be issued and sold in anticipation and collection of the special assessments and the interest and principal payable exclusively from such fund; that payment thereof was secured by pledge of the special assessments and liens against property abutting the improvements; and that in the event of nonpayment of any installment of the special assessments the city would prosecute with due diligence and suit for the collection thereof. The ordinance further provided:

5. * * * Such bonds shall not pledge the full faith and credit of the City of Marion, Ky., for the payment thereof, but shall pledge only the local taxes levied and assessed by this ordinance and the lien created by the same on the property described herein. * * *

6. A sum sufficient to pay the amounts hereinbefore assessed against the City of Marion as its part of the cost of the improvement is hereby appropriated and made payable out of the general fund of the City and the Mayor and City Clerk are hereby authorized and directed to draw warrants upon the City Treasurer in favor of Carey-Reed Co. or his assignees for said amounts against the City.

Section 22 of the Revenue Act of 1932 provides in subdivision (b) as follows:

(b) Exclusions From Gross Income.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

*      *      *      *      *      *      *

(4) TAX-FREE INTEREST.—Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; * * *

In the deficiency notice upon which this proceeding is based the respondent states, as his reason for including in the petitioner's taxable income for 1933 $10,143.64 interest received on the special assessment bonds owned by the petitioner, that "the bonds and interest are not direct obligations of the various cities issuing them but are liens against the private property benefited by the improvements."

Upon the basis of 30 Op. Atty. Gen. 252, the respondent until recently has uniformly held that interest upon bonds of political subdivisions of a state payable out of special assessment funds is exempt from tax. In 1920 he promulgated O. D. 447 and O. D. 491, Cumulative Bulletin No. 2, p. 93. In 1921 he promulgated O. D. 999, Cumulative Bulletin No. 5, p. 102; in 1923, I. T. 1606, Cumulative Bulletin II–1, p. 69; in 1924, I. T. 2074, Cumulative Bulletin III–2, p. 79; in August 1934, G. C. M. 13469, Cumulative Bulletin XIII–2, p. 125. In the last mentioned memorandum the respondent revoked O. D. 999 and I. T. 1606, relating to tax warrants and similar evidences of indebtedness. This memorandum did not overrule O. D. 447 and O. D. 491, the memorandum stating with regard to them that they involved "the taxability of the interest upon *bonds* issued by a city as distinguished from tax bills and similar liabilities, [and] are not controlling in the instant case." O. D. 447 and O. D. 491 were expressly revoked by G. C. M. 16861, Cumulative Bulletin XV–29, p. 11, on the grounds that the bonds there considered were not obligations of the city and the interest thereon accordingly was not exempt from income tax.

On February 4, 1937, the Attorney General, in 38 Op. Atty. Gen. 72, at the request of the Secretary of the Treasury, reconsidered his opinion delivered in 1914 (30 Op. Atty. Gen. 252) in which he had held that the interest on special assessment bonds was exempt from Federal tax.

After such reconsideration the Attorney General declined to modify the earlier opinion and stated:

I do not feel, therefore, that the Attorney General's former opinion should be disturbed * * * and I suggest that any change in policy should be made only in accordance with legislative direction or judicial decision.

The phrase "the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia" contained in section 22 (b) of the Revenue Act of 1932 was unquestionably designed to safeguard the borrowing power of the states and to prevent taxation which might impair its efficacy or burden the property or instrumentalities of the states. In *Denman* v. *Slayton*, 282 U. S. 514,

where the deductibility from the gross income of a taxpayer of interest on indebtedness incurred to purchase tax exempt "obligations or securities" was discussed and held not allowable, the Supreme Court plainly had in mind securities to borrow money.

In *American Viscose Corporation* v. *Commissioner* (C. C. A., 3d Cir.), 56 Fed. (2d) 1033; certiorari denied, 287 U. S. 615, the United States had refunded in 1926 income taxes illegally collected for the years 1917 to 1919 and had added, pursuant to the statute, interest on the amount so collected. The taxpayer claimed that the interest was exempt from Federal income tax because it was "upon obligations of the United States." The court held, however, that it was not exempt, saying:

\* \* \* The exemptions of Congress were evidently meant to aid in the flotation of government bonds and securities by making them tax free and, therefore, more attractive to investors. We see no reason why the construction of the statute should be so broadened as to cover a transaction which had no relation to the flotation of securities, but was one where the government had wrongfully collected money, and, in righting the wrong, had, pro tanto, compensated therefor by paying interest. \* \* \*

In *United States Trust Co. of New York* v. *Anderson*, 65 Fed. (2d) 575, it was held that the statutory exemption from income tax of interest on "obligations" of a state or political subdivision thereof was not applicable to interest received pursuant to law on an award in a city's condemnation proceeding.

In *Kansas City Southern Railway Co.*, 16 B. T. A. 665, this Board held that interest paid by the United States to the Kansas City Southern Railway Co. upon deferred payments, due as compensation for leasing its railroad properties while operated by the Railroad Administration, was not exempt from taxation as interest on obligations of the United States and its possessions. The Board's decision was affirmed by the Circuit Court of Appeals for the Eighth Circuit, *Kansas City Southern Railway Co.* v. *Commissioner*, 52 Fed. (2d) 372. To the same effect see *Missouri Pacific Railway Co.*, 22 B. T. A. 267. Cf. *Leo M. Klein*, 26 B. T. A. 745.

The interest received by the petitioner upon its special assessment bonds was upon bonds issued by cities of the fourth and fifth class of the Commonwealth of Kentucky. For the payment of the bonds, assessments had been made against the benefited property. The property owners were required to pay the taxes assessed into the city treasury. They were required to do that even if suit was brought against the property owners for the collection of the assessment either by the city or by the contractor or bondholder. The judgment made against the property owner had to be paid to the city

treasurer. The city treasurer was required to pay the moneys received from the special assessments to the bondholders.

The bonds in the first instance were offered to the public for sale at par. Such bonds as were not taken by the public were issued to the contractor in payment of the cost of the improvements. The bonds involved in this proceeding were bonds thus issued to the contractor.

The full faith and credit of the city issuing the special assessment bonds was not pledged for their payment. The interest and principal of the bonds were payable exclusively out of collections of assessments made against the benefited property.

In *Castle* v. *City, of Louisa*, 187 Ky. 397; 219 S. W. 439, the court made a clear distinction between bonds pledging the faith and credit of the city and those not so pledging. It held that the bonds issued to cover improvements, the cost of which is borne by the abutting property owners, which bonds did not pledge the faith and credit of the city, formed no part of the indebtedness of the city, saying:

Where street improvement bond ordinance, under Ky. St. sec. 3643, subdivs. 1, 3, and 7, provided that the bonds should not be issued upon the faith and credit of the city, but that the faith and credit of the city should be pledged for the payment of the sums realized upon the assessment on the improved property, the indebtedness provided for was not an "indebtedness," within Const. secs. 157 and 158, fixing the limit of city's "indebtedness."

    &ast;       &ast;      &ast;      &ast;      &ast;      &ast;      &ast;

It is the established rule in this and other jurisdictions that contracts for local improvements, the cost of which is to be borne wholly by the property benefited, form no part of the indebtedness of the municipality, within the meaning of sections 157 and 158 of the Constitution. The reason for the rule is that the contractor or holder of the bond must look alone to the fund created by the collection of the assessments on the abutting property, and the city is a mere agency for collecting the assessments and custodian of the fund when the assessments are collected. &ast; &ast; &ast;

In *City of Mt. Sterling* v. *Montgomery County*, 152 Ky. 637; 153 S. W. 952, the court, in holding that the city was not liable for the cost of street improvements similar to those involved herein, said:

&ast; &ast; &ast; Where the city directs, as it may, that such improvement be made at the exclusive cost of the abutting property, and the statute requires it to be borne in such event exclusively by the abutting property, the liability for the cost of the improvement is in no sense a personal one upon the city. The contractor must look alone to the property designated by the ordinance directing the improvement for pay for his work and materials. &ast; &ast; &ast;

See also *Shaw* v. *City of Mayfield*, 204 Ky. 618; 265 S. W. 13.

Although the courts of Kentucky have held that the special assessment bonds issued by a city are not a part of the city's indebtedness within the limitations placed thereon by sections 157 and 158 of the

Constitution of the Commonwealth of Kentucky, it does not necessarily follow that they are not obligations of the cities issuing them. The fact that the city acts as a trustee for the bondholders does not relieve the city from its obligation to pay to the bondholders the special assessments which are collected. They are obligations of the city to the extent that there is any money in the special assessment fund for the payment of the interest and principal of the bonds.

As indicated above, special assessment bonds must be first offered for sale to the public at not less than par value. In the sale of such bonds the city is exercising its borrowing power. As to bonds thus sold to the public we are of the opinion that they must be held to be obligations of the city selling them, within the meaning of section 22 (b) (4) of the Revenue Act of 1932, and we are of the opinion that no distinction can be made between the special assessment bonds purchased by the public and those issued to the contractor in payment for the improvements.

There is no requirement in the statute that a state or political subdivision thereof shall pledge its full faith and credit for the payment of interest and principal of the bonds. Where it has a limited liability for payment there is an obligation on the part of the city to pay them, albeit out of collections of special assessments. There was clearly such limited liability in the case of the special assessment bonds here in issue.

In *Michael Pontarelli*, 35 B. T. A. 872, we held that interest on special assessment bonds issued by the city of Chicago was exempt from tax upon the ground that the interest was received on obligations of a political subdivision of a state within the meaning of section 22 (b) (4) of the Revenue Act of 1928. No distinction can be made between the proceeding at bar and that case.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*